## MILLIRONS *v.* DILLON.

1. A purchaser to whom the identical property for which he bargained was delivered cannot, though induced to purchase solely by means of a false and fraudulent representation by the seller that the thing sold had certain qualities which it had not, maintain an equitable petition for "specific performance," and thus compel the seller to deliver to him another article of like kind owned by the latter and in fact having such qualities, but which the plaintiff had never purchased.
2. In a proper action for the fraud and deceit thus practiced by the seller, the measure of damages would be the difference between the value of the thing sold at the time of delivery and what would have been its then value if the representation made by the defendant had been true.
3. Even if the present action could, because of the alternative prayer in the declaration, be treated as a suit for damages, the judgment of nonsuit was right, there being no evidence warranting a finding for the plaintiff in any amount.

Argued February 27,—Decided March 22, 1897.

Petition. Before Judge Felton. Bibb superior court. April term, 1896.

*Ryals & Stone*, for plaintiff. *John L. Hardeman* and *Wimberly & Felder*, for defendant.

LUMPKIN, Presiding Justice.

The writ of error sued out in the present case is, from a legal standpoint, entirely devoid of merit.

Millirons brought against Dillon an equitable petition for the "specific performance" of an alleged contract by virtue of which it was claimed that the defendant should be compelled to deliver to the plaintiff a designated cow. There was an alternative prayer that in the event it should be ascertained that the defendant was unable to do this, he should be adjudged liable to the plaintiff in a specified amount of money, the alleged value of the cow in question. A nonsuit was granted upon the following state of facts: Dillon was the owner of a herd of Jersey cattle, including a cow bearing the name of "Sparkling Eyes." Millirons desired to purchase a female calf entitled to registry upon the books of the American Jersey Cattle Club. With this intent, he visited Dillon's farm and expressed a desire to purchase a calf from the latter's best butter cow. Dillon promptly stated that "Sparkling Eyes" answered to this description. While discussing the matter, Millirons observed a female calf which was in fact the offspring of this cow, and made some inquiry concerning it. Dillon fraudulently concealed the fact that this was the calf of "Sparkling Eyes," and falsely represented to Millirons that this particular calf was not entitled to registry, because of some doubt as to the identity of its sire.

If, notwithstanding the fraud thus practiced upon him, Millirons had purchased this calf, he would undoubtedly have procured exactly what he wanted: a fine, thoroughbred Jersey heifer, entitled to registry. But, in consequence of Dillon's false representations, he abandoned all idea of negotiating for this animal, and actually purchased another which was not, in point of fact, entitled to registry. In so doing, Millirons was, by further misrepresentations on the part of Dillon, deceived and made to believe that he was buying a calf of "Sparkling Eyes," and that he could

42

have it registered. It is certain, however, that the identical calf which Millirons thus purchased was in fact delivered to him, and he retained possession of it until it and the genuine calf of "Sparkling Eyes" became cows capable of giving milk. About this time, Millirons discovered the imposition which had been practiced upon him, and the purpose of his petition was to compel Dillon to take back the "bogus" Jersey cow and deliver in its stead the other, which was the genuine offspring of "Sparkling Eyes;" or else, if this were for any reason impracticable, that the plaintiff be allowed to recover of Dillon $300, the alleged value of the animal last mentioned.

The difficulty which lies at the root of the whole proceeding is, that Millirons had never in fact purchased this animal, but on the contrary, had expressly declined to do so; and therefore, his attempt thus to obtain it was nothing short of being absolutely absurd and untenable. We cannot undertake to discuss a proposition so palpably plain. Under the facts recited, Millirons was undoubtedly entitled to damages from Dillon, if the calf actually purchased was of less value than it would have been with an untainted thoroughbred Jersey record. In that event, Millirons' remedy would have been a suit for damages, and the measure of his recovery would have been the difference between the value of the calf delivered to him, just as it then was, and what its value would have been if the representation made by Dillon that it was a thoroughbred Jersey calf entitled to registry had been the truth. The present action can in no sense be treated as a suit for the recovery of such damages; but even if it could be, the plaintiff introduced no evidence whatsoever as to the difference in values above indicated. There was proof to show that the cow of which Millirons desired to obtain possession, viz: the genuine calf of "Sparkling Eyes," was worth $300; but this could throw no light whatever upon the value of the calf he actually bought, treated as a "scrub," as compared with what would

have been its value had it been a thoroughbred filling the description upon the faith of which he purchased.

*Judgment affirmed. All the Justices concurring.*