## 28382. BROWN v. NIXON.

ARGUED NOVEMBER 13, 1973 — DECIDED JANUARY 28, 1974.

*Milton Harrison, Charles R. Adams, Jr.,* for appellant.
*Jones, Cork, Miller & Benton, Wallace Miller, Jr.,* for appellee.
MOBLEY, Chief Justice. This appeal by Mae F. Brown against John P. Nixon is from the denial of a motion for judgment notwithstanding the verdict and motion for new trial, as amended.

The appellant sought the cancellation of a warranty deed from her to the appellee, contending that he was guilty of inceptive fraud in inducing her to sign the deed on his oral promise that the purchase price would include the sum of $11,080 as a 20% discount on a second security deed on the property, when he had no intention of paying her this discount.

This is the third appearance of the litigation in this court. The record in the first case shows that the original petition was filed on February 18, 1966. This court held that the petition stated a cause of action for cancellation, and that summary judgment was properly denied to the defendant (appellee here). *Nixon v. Brown,* 223 Ga. 579 (157 SE2d 20). On the second appearance of the case we again held that it was proper to deny the defendant's motion for summary judgment. *Nixon v. Brown,* 225 Ga. 811 (171 SE2d 512).

When the case was tried by a jury, a verdict was returned for the defendant (appellee).

1. The appellant testified concerning the transaction that: The appellee first came to her farm on January 22, 1965, for the purpose of buying the property. She and her husband were in financial difficulties. After several contacts with the appellee, she and her husband went to the appellee's office on January 27, 1965, and negotiated further on the trade. She suggested that she and

her husband go and get their lawyer. Her husband then said that he would get their lawyer. The appellee told them that there was no need for them to get their lawyer, as he would represent their interest as well as his own (the appellee being a lawyer). The appellee wrote on a pad the various points of their trade. The first point was that the appellee would pay a second mortgage against the property held by Mr. Thomas McCroskey and receive a 20% discount, amounting to $11,080, and would give this discount to the appellant. Other points of the trade included the payment of other indebtedness of the appellant, the conveyance of certain property owned by the appellee to the appellant, the obtaining of a loan on this property by the appellee in his name, an option to purchase ten acres of land, and a cash balance to the appellant. She signed an option to purchase, but it did not include all the points of trade. She signed the warranty deed on January 30, 1965. The appellee kept assuring her that he had the money to pay the indebtedness. He did not pay her the discount of $11,080. She and her husband did not move from the property, and in March the appellee came there and asked her when they planned to move. She told him that they would move just as soon as he completed his part of the trade, and he told her that could be taken care of six months or a year from then. The appellee came back in April and asked when they were moving, and she stated the same thing to him. The appellee then said, "I had no intention of paying you from the beginning and you will move." A little while later that day the sheriff came out and served a trespass warrant on them, and they moved from the property.

The evidence for the appellee showed that: Mr. Thomas McCroskey on January 9, 1965, gave Mr. Glen Van Fossen, a realtor, the exclusive right to sell the second mortgage which McCroskey held on the property of the appellant, for 80% of its face value, or a discount of $11,080, until January 31, 1965. Van Fossen sold the second mortgage to John Dawkins on January 25, 1965, and confirmed the sale on January 26, 1965. On the latter date he informed the appellant's husband that the second mortgage had been sold to Mr. Dawkins, and on January 27, 1965, he went to the appellant's home and talked with her about it. On January 25, 1965, the appellee informed the appellant and her husband that the mortgage had been sold. This was prior to the time that the parties signed any papers. The appellant's husband stated that he would make every effort to get the sale from McCroskey to Dawkins canceled, and the appellee advised the

appellant and her husband that if they could legally get the sale canceled, he would buy the mortgage and give them the discount. The appellee paid the full amount of the mortgage, principal and interest, to Dawkins, realizing no discount.

There was clearly an issue of fact for the determination of the jury on the question of inceptive fraud, and it was not error to deny the appellant's motion for judgment notwithstanding the verdict, and the general grounds of her motion for new trial.

2. The first two special grounds of the motion for new trial assert that an additional charge to the jury was erroneous as a principle of law, and that the recalling of the jury to give this charge, after they had deliberated for more than six hours, unduly emphasized this particular charge.

The charge was as follows: "I charge you that if you conclude from the evidence produced to you that on February 9 Mrs. Brown asked Mr. Nixon to return the transaction back like it was before he came on the scene, or words substantially to that effect, and the response of Mr. Nixon at that time, replied in substance that he was not interested and that the matter was going to have to stand as it was and that thereafter Mrs. Brown cashed the $9,062.96 cashier's check given her in purchase of the property, then Mrs. Brown would be estopped from claiming the cancellation of the deed and your verdict should be for the defendant, if you find those facts that I have outlined to be the truth of the case."

It is the contention of the appellant that this charge practically amounted to the direction of a verdict for the appellee.

In regard to this matter the appellant testified as follows: "The next time I saw Mr. Nixon (appellee) was February 9th. I was down at the Lake Joy property and Mr. Nixon came down and was moving some bed or some furniture out of his cottage down there and I asked Mr. Nixon, you know, about the money and he came up the hill where I was and I said, 'Mr. Nixon, let's tender this thing back exactly like it was before you came on the scene . . . I will give you — you give me the deeds back and we will give all the monies back and let's put it back just like it was before you came on the scene' and his answer to me at that time was 'hell, no', and he left, . . At that time I still had the cashier's check. . . To the best of my recollection I still had it and I deposited it on that same date."

When the case was considered by this court on pleadings this court held that the allegations that the appellant had tendered to the appellee the consideration she received for the sale of her

property, and the appellee refused this tender, were sufficient to show waiver of tender. 223 Ga. 579, supra. On the trial of the case the only evidence in regard to tender was that set out hereinbefore in this division of the opinion. After this conversation with the appellee, the appellant must have been fully aware that he had no intention of paying the discount on the second mortgage. Thereafter she cashed the cashier's check for $9,062.96, given her by the appellee as the cash payment on the purchase of the property. It was more than a year later that she filed her action to cancel the deed.

The trial judge charged a correct principle of law, that a party asserting grounds for rescission of a contract because of fraudulent representations of the other party waives the right of rescission by accepting the consideration of the contract after full knowledge of the alleged fraud. 12 CJS 996, Cancellation of Instruments, § 38.

The judge instructed the jury before giving the additional charge that it was not to be considered with any emphasis.

These grounds are without merit.

3. The third, fourth, and fifth special grounds complain that the court erred in refusing to give requested charges concerning the contention of the appellant that the appellee acted as her attorney in the transaction. The court fully charged on the good faith required of counsel in dealing with his client. Insofar as the requested charges were pertinent to the case, the principles were covered by the charge given.

4. Special ground six complains of the failure of the judge to give a requested charge in regard to tender. The judge gave instructions on tender, and the waiver of tender, which covered the issues in the case. It was not error to refuse to give the requested charge, which mainly pertained to the allegations of the appellant.

5. The seventh special ground asserts that the court erred in refusing to give a requested charge that in the event the jury found for the appellant, it should not concern itself with any monetary award between the parties, as the court would adjust the equities between the parties in the final decree.

The court instructed the jury that the only matter for their determination was whether the appellant was entitled to rescind the contract. It was not error to refuse to instruct them as to the court's duties.

6. The eighth and ninth special grounds assert that the trial judge erred in withdrawing evidence from the jury by the attorney for J. L. Todd Auction Company, which company had a contract

to sell the appellant's property at the time the appellant and appellee entered into their contract of sale. The evidence related to a conversation between the attorney and the appellee in regard to a settlement of the claim of the auction company for services rendered to the appellant preparatory to selling the property.

The trial judge properly held that this evidence was not germane to the case.

*Judgment affirmed. All the Justices concur.*