## 50076. HARISON-GULLEY CHEVROLET, INC. v. CARR.

MARSHALL, Judge.

This is an appeal from the denial of a motion for summary judgment by appellant Harison-Gulley Chevrolet, Inc. Appellee Eleanor Carr brought suit in Richmond Superior Court against appellee Harison-Gulley Chevrolet, Inc., in which she sought to recover for the wrongful death of her two children, under the provisions of Code § 105-1307 of the Code of Georgia of 1933, as amended. Appellee Carr's complaint alleged that her decedent, Cynthia Carr, purchased a 1973 Volkswagen automobile from appellant, Harison-Gulley Chevrolet, Inc., on August 24, 1973. The complaint alleges that the vehicle was a used vehicle and that it was "practically new, having been driven only 6,000 miles." It was further alleged that the vehicle did not have the standard size steering wheel for a vehicle of its kind and that it had oversized tires on the front and rear and that appellee sold the vehicle to appellant's decedent knowing that it was in an unsafe and dangerous condition. The complaint further alleged that at the time the vehicle was sold, the steering mechanism was faulty and that this condition was not discovered by appellee's decedent until four or six days following the sale transaction. It is further alleged that upon discovery, Cynthia Carr, the deceased daughter of appellee, took the car back to appellant for correction of "the faulty steering mechanism" but that appellant failed and refused to make such correction then or at any time prior to the death of Cynthia Carr. The complaint further alleges that appellee's decedent, Cynthia Carr, was driving the vehicle west on Georgia State Highway 402 at a point 11.8 miles from Madison, Georgia, when the steering mechanism suddenly failed to operate properly causing appellee's children, Cynthia Carr and Thomas Carr, to be instantly killed. The complaint further alleged that the proximate cause of the death of the two children of appellee was the negligence of appellant in selling the motor vehicle to Cynthia Carr with an improper size steering wheel, oversized tires and a faulty steering

mechanism.

Appellant filed defensive pleadings in which it denied liability and asserted other defenses. Subsequently, depositions were taken and appellant filed its motion for summary judgment based on the pleadings, the deposition of one John Byrum, the deposition of Bennie Hill, the deposition of Thomas Carr and supporting affidavits. After a hearing on the motion for summary judgment before the Judge of Richmond Superior Court, the court denied appellant's motion for summary judgment and appellant appealed to this court.

The sole issue to be determined by this court is whether or not the trial judge erred in overruling appellant's motion for summary judgment. *Held:*

The trial judge erred in overruling appellant's motion for summary judgment. In a motion for summary judgment, the burden is on the movant to demonstrate that there are no genuine issues of fact and that the movant is entitled to judgment as a matter of law. *Citizens Bank v. Barber,* 123 Ga. App. 507 (2) (181 SE2d 545); *Werbin & Tenenbaum, Inc. v. Heard,* 121 Ga. App. 147 (2) (173 SE2d 114). For the following reasons we hold that the trial judge should have granted appellant's motion for summary judgment.

(a) Appellant was not liable to appellee on the theory of breach of implied warranties. Appellee's decedent joined with another in purchasing a used motor vehicle and they accepted the vehicle as it was after test driving it. There is no dispute in the evidence that the Volkswagen in question was obtained by appellee as a used car, with a very low speedometer mileage and an unexpired safety sticker affixed, and that it was offered for sale as a used vehicle. The deposition of Bennie Hill also reveals that he and Cynthia Carr inspected the Volkswagen, including the steering wheel and the tires, and that they also test drove the vehicle prior to the purchase. Code Ann. § 109A-2—316 (3) (b) provides: "when the buyer before entering into the contract has examined the goods or the sample or model as fully as he desired or has refused to examine the goods there is no implied warranty with regard to defects which an examination ought in the circumstances to have revealed

to him." Thus, even if appellee's complaint reasonably raises the theory of breach of implied warranty, such ground of recovery cannot be maintained as to the oversized steering wheel and tires. Implied warranties as to any other defects were excluded by the express terms of the sale that the vehicle was sold "as is." Code Ann. § 109A-2—316 (3) (a).

(b) Appellant is not liable to appellee on a negligence theory. At the time appellant obtained possession of the vehicle in question, it was under no duty to inspect for latent defects. The undisputed evidence in this case is that there was an unexpired inspection sticker (or certificate) affixed to the Volkswagen in question. The 1971 revision of Code Ann. § 68-1726.6 reads, as follows: "New and used car dealers — No dealer engaged in the business of selling new or used motor vehicles shall sell at retail any vehicle required to be inspected by this Article [§§ 68-1723 through 68-1726.7] unless there appears on said vehicle an unexpired certificate." Ga. L. 1965, pp. 188, 195; 1971, pp. 515, 516. The change in the wording of the Code section clearly indicates that as of the effective date of the 1971 revision, the General Assembly did not intend to place an obligation upon an automobile dealer to inspect a used vehicle for sale in the event it already had affixed thereon an up-to-date inspection sticker.

Furthermore, the vehicle possessed no obvious defects which would have constituted notice to appellant that the vehicle possessed dangerous qualities. Bennie Hill's deposition reveals that the two purchasers were aware that the vehicle lacked a radio antenna and that the signal lights and the horn functioned improperly. When these defects were brought to the attention of appellant's employees at the time of the sale, the purchasers were advised that appellant did not work on Volkswagens and they were told to take the vehicle to Coleman, another repair facility.

As to latent defects, the evidence shows that the two purchasers, Cynthia Carr and Bennie Hill, did not discover the faulty steering mechanism until four or six days following the purchase of the vehicle. Both Mr. John Byrum, employee of appellant, and Bennie Hill testified on deposition that the vehicle was not returned to

appellant for the purpose of making any corrections after the sale was completed. Knowledge by appellant of defects in the radio antenna, horn and signal lights cannot be said to be notice of defects that would amount to dangerous qualities of the vehicle. The defects pointed out to appellant in fact had nothing to do with the defect that caused the accident — the steering mechanism. A vendor dealer is under no obligation to test an article purchased and sold by him for the purpose of discovering latent or concealed defects. *King Hardware Co. v. Ennis,* 39 Ga. App. 355 (147 SE 119). In that case, the court stated (p. 360) in its opinion: "it is the general rule that a vendor or dealer who is not the manufacturer is under no obligation to test an article purchased and sold by him for the purpose of discovering latent or concealed defects, but that when he purchases and sells an article in common and general use, in the usual course of trade, without knowledge of its dangerous quality, and with nothing tending reasonably to call his attention thereto, he is not negligent in failing to exercise care to determine whether it is dangerous or not. In such a case he may assume that the manufacturer has done his duty in properly constructing the article and in not placing upon the market a commodity which is defective and likely to inflict injury." Also see *Washburn Storage Co. v. General Motors Corp.,* 90 Ga. App. 380 (83 SE2d 26) and *Glynn Plymouth, Inc. v. Davis,* 120 Ga. App. 475 (170 SE2d 848).

(c) Even if appellant were under a duty to discover the defect, its failure to do so could not have been the proximate cause of the overturning of the vehicle. Appellee's decedent, Cynthia Carr, purchased a used vehicle as it was and later used it extensively, employing three different independent contractors to inspect, maintain and make mechanical corrections to the vehicle, prior to the fatal accident to appellee's decedent. The depositions attached to the motion for summary judgment conclusively establish that the purchasers of the Volkswagen in question, did not have further communication or dealings of any kind or nature with appellant after the Volkswagen was driven from appellant's premises on the day it was purchased. The deposition of Bennie Hill also demonstrates clearly that

he and Cynthia Carr, co-owners of the vehicle, assumed full responsibility for maintenance, repairs, operation and ownership of the vehicle from the time it was purchased from appellant. This deposition also reveals that Bennie Hill and Cynthia Carr took the vehicle to Coleman, a repair facility, on two occasions, and, further that they also took the vehicle to Rader Volkswagen-Porche-Audi-Mercedes, Inc., a Volkswagen dealer in Augusta, and to a service station, only identified as "Amoco-on-the-hill by the Seven-Eleven." On each of these occasions, the nut on the steering wheel was tightened. It is significant that when Bennie Hill was asked why he did not call appellant concerning the loose steering wheel, he answered that appellant's employee had made it clear to him that they did not work on Volkswagens. Hill also testified on deposition that the nut did not come loose again after he took it to Rader, one of the repair facilities. It is also clear from the depositions that Cynthia Carr made a round trip from Augusta, Georgia, to Fort Valley, Georgia, a distance of several hundred miles during the interval between the purchase of the vehicle and the fatal accident.

It is apparent that appellant cannot be held responsible or liable for the negligence of the several independent contractors in failing to properly repair the vehicle in question. There is no contention by appellee that these other automobile repair facilities who undertook to repair the steering mechanism on the vehicle in question were other than completely independent contractors with reference to appellant. Appellant had no control or relationship whatsoever with any one of the other repair organizations who attempted to adjust or tighten the steering wheel on the vehicle. Appellant, therefore, cannot be held liable for any negligence or faulty workmanship which any of the other repair facilities may be liable for. Even if appellant were under a duty to discover and remedy the steering mechanism defect, and it failed to do so, appellee could not prove that its failure proximately caused the injury in light of these intervening causes. See *Liberty Homes, Inc. v. Stratton,* 90 Ga. App. 675 (83 SE2d 818); *Hodge v. Dixon,* 119 Ga. App. 397 (167 SE2d 377); *Taylor v. Atlanta*

*Gas Light Co.,* 93 Ga. App. 766 (92 SE2d 709).

(d) Finally, even if appellant were negligent, appellee would be barred from recovery because appellee's decedent, Cynthia Carr, was negligent in continuing to operate the motor vehicle in question from the date she became aware of the steering defect, until the date of the accident, September 16, 1973. It is clear from a reading of the depositions attached to the motion for summary judgment that on at least three occasions the dangerous condition of the steering mechanism of the vehicle in question was apparent and known by appellee's decedent, Cynthia Carr. Nevertheless, she continued to drive the vehicle, including the driving of the vehicle on an extended trip to Fort Valley, Georgia, and return to Augusta. Code § 105-603 bars recovery by a plaintiff who by ordinary care could have avoided the consequences to himself caused by the defendant's negligence. In *Wade v. Roberts,* 118 Ga. App. 284 (163 SE2d 343), this court stated that where one with full knowledge that heavy gravel had collected on a driveway, walked thereon in the daytime when said gravel can clearly be seen on the driveway and collected in cracks, such a person assumes the risk of the gravel rolling on the concrete when stepped upon and cannot recover from any injuries sustained as a result of slipping on said gravel while walking up an incline on said driveway, even though the owner may have been negligent in permitting such gravel to accumulate thereon. In the case at hand, the fact that Cynthia Carr knew of the defective steering mechanism and yet, in spite of such knowledge, continued to drive the vehicle demanded a finding that she assumed the risk of operating the defective vehicle and her mother is therefore barred from recovering for the value of her life under the wrongful death statute. See *Southland Butane Gas Co. v. Blackwell,* 211 Ga. 665 (88 SE2d 6); *Yankey v. Battle,* 122 Ga. App. 275 (176 SE2d 714); *Smith v. Bel-Arbor, Inc.,* 121 Ga. App. 739 (175 SE2d 146).

*Judgment reversed with judgment entered for defendant. Bell, C. J. and Webb, J., concur.*

ARGUED JANUARY 7, 1975 — DECIDED MARCH 21, 1975 — REHEARING DENIED APRIL 4, 1975.

*Allgood & Childs, T. Allen Childs, Jr.,* for appellant.
*John D. Watkins,* for appellee.