**Brian Atwood WANSOR, Plaintiff-Appellant,**

v.

**GEORGE HANTSCHO CO., INC., Third Party Plaintiff-Defendant-Appellee,**

v.

**W. R. BEAN & SON, INC., Third Party Defendant-Appellee.**

No. 75–3093.

United States Court of Appeals, Fifth Circuit.

May 16, 1979.

Cullen M. Ward, W. Davis Hewitt, Jackson C. Floyd, Jr., Atlanta, Ga., for plaintiff-appellant.

N. Forrest Montet, Atlanta, Ga., for third party plaintiff-defendant-appellee.

T. Cullen Gilliland, Atlanta, Ga., for other interested parties.

Before BROWN, Chief Judge, COLEMAN and MORGAN, Circuit Judges.

JOHN R. BROWN, Chief Judge:

Plaintiff-Appellant Brian Wansor suffered incapacitating injuries to his hands while performing a clean-up operation on his employer's printing press. He brought this suit against the manufacturer of the press, alleging (1) negligence in various aspects of the design of the machine and (2) breach of the implied warranties of merchantability and intended use, imposed by Ga.Code Ann. § 105–106.[1]

At trial, after Wansor presented his case to the jury, the District Judge directed a verdict in favor of defendant. On appeal, this Court declined to decide the merits of the case, since there was some doubt whether Ga.Code Ann. § 105–106—the relevant portion of which was enacted in 1968[2]—applied to this particular machine, which was manufactured and installed between 1961 and 1962. We instead certified the related question of the retroactivity of § 105–106 to the Georgia Supreme Court.[3]

In response, that Court issued an opinion in which it found the statute prospective only and, therefore, not applicable to machinery manufactured and installed before 1968.[4] Because this holding removes the issue of implied warranties from the case, only the question of the propriety of the directed verdict on the negligence issue remains. We think that Georgia law commands the action taken by the District Court and, therefore, affirm.

Generally Wansor claims that the defendant company was negligent in failing to install safety features that would protect machine operators while they cleaned the press to remove ink residue after a printing run. We described this wash-up process and Wansor's injury in our original opinion:

> After each run, the press was stopped, pans placed under the rollers, and the press turned on so that all six units were idling. Each crew member, armed with a bottle filled with naptha, a cleaning solvent, then stood on a catwalk running around each unit and into the machine and squirted naptha on the unguarded, revolving rollers. Some of the naptha, mixed with ink, would be thrown back onto the catwalks as the rollers turned. Most of the ink and solvent would drip onto the lowest rollers and into the pans. The lower roller was cleaned by a blade that scraped off the accumulating residue. This blade was adjusted before and

---

1. 2. The statute, amended in 1968 to add the second sentence, the language relevant here, provides:

   **105–106.** (4408) **Privity to support action.** —No privity is necessary to support an action for a tort; but if the tort results from the violation of a duty, itself the consequence of a contract, the right of action is confined to the parties and privies to that contract, except in cases where the party would have had a right of action for the injury done, independently of the contract, and except as provided in Code section 109A–2—318. However, the manufacturer of any personal property sold as new property, either directly or through a dealer or any other person, shall be liable in tort, irrespective of privity, to any natural person who may use, consume or reasonably be affected by the property and who suffers injury to his person or property because the property when sold by the manufacturer was not merchantable and reasonably suited to the use intended and its condition when sold is the proximate cause of the injury sustained; a manufacturer may not exclude or limit the operation hereof.

2. See note 1, *supra.*

3. *Wansor v. George Hantscho Co.,* 5 Cir., 1978, 570 F.2d 1202; *Wansor v. George Hantscho Co.,* 5 Cir., 1978, 580 F.2d 726.

4. *Wansor v. George Hantscho Co.,* 1979, 243 Ga. 91, 252 S.E.2d 623 [1979]. In this opinion the Court reiterated its prior recognition in *Center Chemical Co. v. Parzini,* 1975, 234 Ga. 868, 218 S.E.2d 580, that § 105–106 provides "for strict tort liability against a manufacturer of [defective] personal property which is sold as new property . . . ." *Id* at 624. In response to our specific question, the Georgia Supreme Court explained that

   [h]aving reached the conclusion that a new cause of action in tort has been established by the legislature by its enactment of Code Ann. § 105–106, it follows that, under Code Ann. § 102–104 [which forbids the retroactive application of laws], this statute may not be given retroactive effect."
   *Id* at 625.

during the process to ensure that all the residue was removed. Wansor's injuries occurred while he was making this adjustment . . . .

To adjust the scraper blade, Wansor had to crouch on the catwalk to avoid being hit by the rollers above him, turn two screws located about fifty inches apart, then back out in the same Russian-folk-dance crouched walk. On the date involved here, Wansor had finished adjusting the screws and was beginning to back out of the machine when . . . his right hand became caught in the unguarded rollers. He attempted to pull his hand out but succeeded only in entangling his left hand as well and in the struggle caught his hair on the upper rollers. Although the machine was quickly turned off, Wansor's hands were severely mangled. Despite extensive medical treatment, he lost most of the fingers and part of the thumb from his right hand and two fingers from his left hand.

570 F.2d at 1204.

■ More specifically [5] appellant claims that Hantscho Company should have (1) placed guards near the scraper blade to prevent contact with moving rollers and (2) designed the screws so that they could be adjusted without an operator's having to crouch inside the machine. The District Judge, considering these same contentions, held that the danger involved in the wash-up process was open and obvious; [6] under

Georgia law, this constituted an absolute legal defense for defendant.

■ Our examination of Georgia law leads us to the same conclusion. The courts of that state have adopted the reasoning of *Campo v. Scofield*, 1950, 301 N.Y. 468, 95 N.E.2d 802: [7]

If a manufacturer does everything necessary to make the machine function properly for the purpose for which it is designed, if the machine is without any latent defect, and if its functioning creates no danger or peril that is not known to the user, then the manufacturer has satisfied the law's demands. We have not yet reached the state where a manufacturer is under the duty of making a machine accident proof or foolproof. * * [H]e is under no duty to guard against injury from a patent peril or a source manifestly dangerous. * * * In such cases, the manufacturer has the right to expect that such persons will do everything necessary to avoid such contact, for the very nature of the article gives notice and warning of the consequences to be expected, or the injuries to be suffered. In other words, the manufacturer is under no duty to render a machine or other article 'more' safe—as long as the danger to be avoided is obvious and patent to all.

See *Stovall & Co., v. Tate*, 1971, 124 Ga. App. 605, 184 S.E.2d 834; *Poppell v. Waters*, 1972, 126 Ga.App. 385, 190 S.E.2d 815.[8]

---

**5.** Although appellant makes other related claims, his argument focuses mainly on these two. Moreover, the result we reach disposes also of these related claims.

**6.** As the Court explained to the jury,

it is not a case of an imminently dangerous device, as the example in many cases. It is a case of a patent—if there is any defect in this equipment, it is a patent defect as opposed to a latent defect. Mr. Wansor, the plaintiff, and every other witness has testified, as was obvious to anyone and everyone, that this was dangerous equipment. It is dangerous, the same as an airplane propeller that is turning is dangerous, and a person knows or should know that he better stay out of it.
Transcript, pages 501–02.

**7.** Appellant argues that because the New York courts have overruled *Campo, Micallef v. Miehle Co.*, 1976, 39 N.Y.2d 376, 384 N.Y.S.2d 115, 348 N.E.2d 571, we should now find that *Campo*'s rationale no longer stands as the law of Georgia. His reasoning, however, is faulty. Although Georgia courts have adopted *Campo*'s holding, they are not controlled by the New York judiciary's subsequent decisions. We, on the other hand, in reviewing this diversity case, are absolutely bound by the decisions of the Georgia courts, one of which recently affirmed the *Campo* approach. *Hunt v. Harley-Davidson*, 1978, 147 Ga.App. 44, 248 S.E.2d 15.

**8.** Cf. *Harison-Gulley Chevrolet, Inc. v. Carr*, 1975, 134 Ga.App. 449, 214 S.E.2d 712; *Roberts v. Bradley* 1966, 114 Ga.App. 262, 150 S.E.2d

Moreover, the Georgia courts have consistently held that "there need be no warning to one in a particular trade or profession against a danger generally known to that trade or profession." *Su v. Perkins*, 1974, 133 Ga.App. 474, 482, 211 S.E.2d 421, 426; *Eyster v. Borg-Warner Corp.*, 1974, 131 Ga.App. 702, 703, 206 S.E.2d 668, 670.

Against this legal backdrop, Wansor cannot escape the inevitable result of his having admitted at trial that he knew of the obvious danger the printing press presented.[9] Although we fully sympathize with appellant's plight, we must conclude that whether or not defendant was negligent,[10] Georgia law precludes his recovery.

AFFIRMED.

720; *Fricks v. Knox Corp.*, 1951, 84 Ga.App. 5, 65 S.E.2d 423.

9. Q. Did anybody from W. R. Bean ever caution you at all with regard to any danger that might exist from these rollers at any time?

A. Well, I couldn't really place any one person but it was obvious that they were dangerous.

Q. Now, you just mentioned, Mr. Wansor, that it was obviously dangerous. Those were your words, were they not, sir?

A. Yes, sir.

Q. What was it that was obviously dangerous, sir?

A. The rollers. I mean, you know, the way they could—the way they were—I mean it just seemed you looked at it and you thought, you know, that's a dangerous machine.

Cross-examination of Brian Wansor by defendant's counsel, transcript at 116–17.

10. We express no opinion on this question. There is some evidence in the record that defendant intended for the rollers to be stopped during the clean-up process. This instruction, however, was communicated only orally, if at all. Depositions of Hans Hovelman and Albert Tiso, employees of Hantscho Company, and depositions of Gerald Greene, Charles Latham, and Larry Leseueur, employees of W. R. Bean & Son, Inc.—appellant's former employer. None of these were admitted as evidence at trial.