62208. PREISER v. JIM LETTS OLDSMOBILE, INC. et al.
62209. JIM LETTS OLDSMOBILE, INC. v. PREISER.

CARLEY, Judge.

Appellant agreed to purchase an automobile for his daughter and son-in-law, the Neumans, and authorized them to find one which would meet their needs. The Neumans began negotiations with a

salesman of appellee-Jim Letts Oldsmobile (Jim Letts) and discussed the various options and equipment they were seeking including a V-8 engine. At this time Jim Letts was apparently unaware that appellee-General Motors Corporation (GM) was manufacturing 1977 Oldsmobiles with Chevrolet engines. Consequently, no specific notice of this fact was being given by Jim Letts to its customers at the time the Neumans were looking at Oldsmobiles. The Neumans also wanted the automobile they purchased to be equipped with a sun roof. The sole probative evidence concerning the sun roof negotiations cited by appellant in a voluminous record is the testimony of Jim Letts' salesman. According to the salesman, "it was explained to [appellant's daughter and son-in-law] — as I say, they had a period of time of eight to ten weeks [within which they wanted delivery] — that we could not order them a car [from Detroit] and get it with a sun roof in it [in less than 12 to 16 weeks], but that we could get one locally." Because the salesman thought "[t]he same company that installs [sun roofs in Atlanta] installs them in Detroit [on factory ordered automobiles]," he represented to the Neumans that the sun roof they would obtain locally "would be similar" to one which would be factory-installed. Acting on this, the Neumans agreed that any automobile they purchased "would be put in at the local shop [for installation of a sun roof] in order to get the car to them earlier."

Pursuant to the understanding that they would receive an automobile with a V-8 engine and which would be equipped locally with a sun roof "similar" to the one which would be installed if factory-ordered, the Neumans agreed on March 2, 1979, to purchase a 1977 Oldsmobile Delta Royal 88 from Jim Letts. The "Retail Buyers Order" of that date specified "8-10 weeks delivery or deposit to be returned" and made no mention of a factory-installed sun roof. GM delivered the automobile to Jim Letts and Jim Letts, in turn, sent the car to local sun roof-installer. On April 25, 1977, the Neumans accepted delivery of the automobile from Jim Letts. Appellant supplied the funds for the purchase and the automobile was titled in his name. The "Retail Buyers Order" of April 25, 1977, reflects, under the heading "Dealer Installed Equipment" the following notation: "[$] 898.00 Add Astro Roof." The evidence is in conflict on the issue of what information was relayed to the Neumans concerning the V-8 engine in their automobile prior to delivery and acceptance. According to Jim Letts' salesman, he orally informed the Neumans prior to their acceptance of the vehicle that it contained an engine manufactured by Chevrolet. The Neumans and appellant assert, however, that no notification of this fact was made to them until some time after delivery and acceptance at which time they received copies

of the invoice, across the face of which had been typed: "This vehicle produced with a non Oldsmobile engine."

Thereafter, on September 15, 1977, the vehicle was ostensibly abandoned on Jim Letts' premises. On September 20, 1977, appellant made a written demand on Jim Letts to "do one of the following things: 1. Repair the sun roof under warranty and replace the engine with an Oldsmobile engine[;] 2. Rescind the sale, take the car back, and refund the full purchase price . . . [;] 3. Replace the car with a properly operating comparable vehicle with an Oldsmobile engine." On September 21, 1977, Jim Letts replied, asserting that the automobile had been purchased with "full knowledge" that it contained a Chevrolet engine, that although the warranty on the sun roof was from the independent contractor who had installed it Jim Letts had nevertheless made the necessary arrangements to have it repaired, and that Jim Letts, having disclaimed all warranties on the car, any claims predicated upon a breach of warranty were properly directed to GM.

On November 30, 1977, appellant filed the instant multicount complaint against Jim Letts and GM. Six counts were directed against Jim Letts and GM jointly and sounded in fraud, misrepresentation and breach of express and implied warranties. These six counts were premised upon the fact that the automobile contained neither an Oldsmobile engine nor an Oldsmobile factory-installed sun roof. The remaining three counts of the complaint were directed solely against Jim Letts. Two of these counts alleged damages to the interior of the car while in Jim Letts' possession and the third asserted a violation of the Motor Vehicle Information and Cost Savings Act, 15 USCA § 1981 et seq. Jim Letts and GM moved for summary judgment. GM was granted summary judgment as to all claims against it. Jim Letts was granted partial summary judgment as to some claims and denied summary judgment as to others. In Case Number 62208 appellant appeals from the order of the trial court insofar as it granted summary judgment to Jim Letts and GM. In Case Number 62209 Jim Letts cross-appeals insofar as the order of the trial court denied it summary judgment on the remaining claims of appellant's complaint. We deal first with the issues raised in the main appeal.

*Case Number 62208*

1. Appellant argues that it was error to grant GM summary judgment on his claim that there was a fraudulent misrepresentation concerning the engine in the vehicle. Appellant urges, essentially, that he purchased the automobile under representations that it was an Oldsmobile and GM fraudulently concealed the fact that it contained a Chevrolet engine. "'To support an action of deceit on the

grounds of failure to disclose a material fact, the evidence must show that there was a concealment of a material fact, that such concealment was done to induce another to act and that it was done in such a manner as to deceive and mislead." *Jackson v. Smith,* 94 Ga. App. 697, 701 (96 SE2d 193) (1956). In support of the position that it pierced appellant's pleadings and was properly granted summary judgment as to this count, GM asserts that the evidence demonstrates that there was no concealment of the fact that the vehicle contained a Chevrolet engine and that appellant bought the automobile with this knowledge. In this argument GM relies upon the fact that the Neumans and appellant received a copy of the invoice with the notation: "This vehicle produced with a non Oldsmobile engine." We believe that GM's reliance upon this document and notation is misplaced, at least insofar as the fraud count for damages is concerned. The evidence is undisputed that this document was not received until some time *subsequent* to the final delivery of the car to the Neumans and acceptance by them. "An independent action in tort based on fraud and deceit arising out of contract is not a suit for the violation of the contract but involves affirmance of the contract and the defrauded party may keep the benefits of the contract and maintain the action for the damages sustained by reason of the fraud." *Gem City Motors v. Minton,* 109 Ga. App. 842 (137 SE2d 522) (1964). Thus, where as here, the alleged fraud was the concealment of a material fact which induced a contract, the tort of fraud is complete when the contract is executed and cannot, as GM urges, be obviated by a post-contract representation of the true facts. "Wilful misrepresentation of a material fact, *made to induce another to act, and upon which he does act to his injury, will give a right of action . . .*" (Emphasis supplied.) Code Ann. § 105-302. It is GM's actions or inactions before, not after, the contract was consummated that are important in determining its liability for fraud. GM also asserts that the fact that some of its Oldsmobiles contained Chevrolet engines was well publicized prior to the delivery of the vehicle to the Neumans. However, we are unable to say, on the record before us, that this alone demonstrates that, as a matter of law, there was a lack of diligence on the part of appellant or the Neumans to discover the concealment in such time as to protect against loss, if any. See generally *Braselton Bros. v. Better Maid Dairy Products,* 222 Ga. 472 (150 SE2d 620) (1966).

Nor can we agree that GM's evidence pierced appellant's pleadings as to damages resulting from the alleged fraud. "[T]he measure of damages would be the difference between *the value of the thing sold at the time of delivery and what would have been its then value* if the representation made by the defendant had been true."

(Emphasis supplied.) *Millirons v. Dillon,* 100 Ga. 656 (2) (28 SE 385) (1897). The evidence relied upon by GM as demonstrating that appellant suffered no damage from the alleged concealment of the Chevrolet engine relates solely to the *resale* value of the Oldsmobile, not its value at the time of delivery. See *Murdock v. Godwin,* 154 Ga. App. 824 (269 SE2d 905) (1980). We are cited to no evidence which would demonstrate that, as a matter of law, at the time of delivery the Oldsmobile with a Chevrolet engine was of equal value to an Oldsmobile with an Oldsmobile engine. At trial proof of damages will be an element of appellant's case but on summary judgment the burden was on GM to show that no genuine issue of material fact remained in this regard. That burden was not met. It was, however, not error to grant GM summary judgment as to the fraud count for rescission of the contract. It is undisputed that the Neumans and appellant received a copy of the invoice with the "non Oldsmobile engine" notation a relatively short time after the sale was consummated in April of 1975. Despite this, the automobile was not returned to Jim Letts for some several months at which time approximately 12,000 miles had been put on it. "A contract may be rescinded at the instance of the party defrauded; but in order to rescind he must promptly, upon discovery of the fraud, restore or offer to restore to the other whatever he has received by virtue of the contract, if it be of any value." Code Ann. § 20-906. "[A] party asserting grounds for rescission of a contract because of fraudulent representations of the other party waives the right of rescission by accepting the consideration of the contract after full knowledge of the alleged fraud. [Cit.]" *Brown v. Nixon,* 231 Ga. 619, 622 (203 SE2d 200) (1974). Under the evidence of record before us, GM was entitled to summary judgment as to appellant's rescission count. See generally *Baum v. Hobbs,* 20 Ga. App. 619 (93 SE 165) (1917); *Horne & Ponder v. Evans,* 31 Ga. App. 370, 373 (7b) (120 SE 787) (1923). See also *Jordy v. Dunlevie,* 139 Ga. 325 (77 SE 162) (1912); *Woodall v. Beauchamp,* 142 Ga. App. 543, 544 (1) (236 SE2d 529) (1977).

2. Appellant asserts that it was error to grant GM summary judgment as to the count alleging a violation of the Georgia Fair Business Practices Act (FBPA). It is uncontroverted that appellant did not comply with Code Ann. § 106-1210 (b) by directing a written notice of demand for relief specifically to GM. Appellant urges, however, that his letter of September 20, 1977, directed to Jim Letts, was delivery of the required notice to GM's "agent" and the statutory requirement was thus satisfied as to GM. Assuming without deciding that the letter of September 20, 1977, otherwise complies with the requirements of Code Ann. § 106-1210 (b), it is clear that Jim Letts is not GM's "agent." See *Burkhalter v. Ford Motor Co.,* 29 Ga. App. 592

(116 SE 333) (1922). Accordingly, appellant's reliance upon this letter to Jim Letts as sufficient notice to GM of his alleged FBPA claim is misplaced. GM was properly granted summary judgment as to this claim. Cf. *Rewis v. Browning,* 153 Ga. App. 352, 355 (9) (265 SE2d 316) (1980).

3. Appellant urges that the trial court erred in granting both GM and Jim Letts summary judgment on his claims for breach of express and implied warranties. Turning first to GM and the claim based upon the Chevrolet engine, the only argument asserted by GM on appeal for the proposition that it was properly granted summary judgment on appellant's warranty claim under Code Ann. §§ 109A-2—313 and 109A-2—314, is that under the circumstances of this case, any warranties as to the engine were disclaimed by its advertising or by the invoice. For the reasons discussed in Division 1 alone, we cannot agree that GM has, as a matter of law, demonstrated a disclaimer of whatever warranties might have existed in the sale. See generally *Central Dodge v. Mobley,* 155 Ga. App. 712 (272 SE2d 502) (1980). Accordingly, we find that genuine issues of material fact remain with regard to appellant's warranty claims against GM predicated upon the automobile engine. With reference to appellant's claim for breach of warranty on the automobile's sun roof, however, the evidence of record affirmatively demonstrates that GM was not the "seller" and therefore it was not erroneously granted summary judgment as to any claims predicated upon the malfunction of that part of the automobile.

With regard to appellant's breach of warranty claims against Jim Letts, the record demonstrates that all warranties were effectively disclaimed and summary judgment was properly granted. See generally *Harison-Gulley Chevrolet v. Carr,* 134 Ga. App. 449 (214 SE2d 712) (1975).

4. Appellant enumerates as error the trial court's grant to GM and Jim Letts of summary judgment as to the claim for violation of the Magnuson-Moss Warranty Act, 15 USCA § 2301, et seq. In his brief, however, appellant argues only that summary judgment on this theory was erroneously granted to Jim Letts. Under 15 USCA § 2310 (d) (1), "a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapt.r, or under a written warranty, implied warranty, or service contract, may bring suit for damages and other legal and equitable relief..." Under the undisputed facts of this case, Jim Letts was not, as is urged by appellant, a "warrantor warranting a consumer product by means of a written warranty" under 15 USCA § 2304 (a). Nor, contrary to appellant's assertions, does Jim Letts come within the prohibition of 15 USCA § 2304 (a) on a "supplier's" right to

disclaim or modify implied warranties. Accordingly, we find, under the facts of the instant case, no applicability of the Magnuson-Moss Act to the transaction between appellant and Jim Letts. Summary judgment as to this claim was not erroneously granted to the latter.

*Case Number 62209*

5. Jim Letts asserts that its motion for summary judgment on the damages claim for fraudulent misrepresentations was erroneously denied. In regard to the engine, Jim Letts essentially urges the same argument advanced by GM, that argument being that there was no concealed fact. We agree that the evidence is somewhat weaker as to the misrepresentation claim against Jim Letts than against GM. Apparently, on March 2, 1977, when the Neumans entered into the agreement to purchase the vehicle, Jim Letts had no knowledge that GM was supplying it Oldsmobiles equipped with Chevrolet engines. Knowledge on the part of the person making an alleged misrepresentation is an essential element of the tort of deceit based upon fraud. *Whaley v. Holt,* 110 Ga. App. 228 (138 SE2d 196) (1964). However, there is evidence which would support a finding that prior to final delivery and acceptance by the Neumans, Jim Letts did obtain knowledge that the Oldsmobile contained a Chevrolet engine and did not specifically apprise them of that fact. Thus, construing the evidence most strongly against the movant, before the contract was consummated, Jim Letts had knowledge of the alleged material concealed fact but did not specifically advise the Neumans that their automobile contained a Chevrolet engine. Appellant is entitled to affirm the executed contract and to sue for damages sustained as the result of Jim Letts' failure to disclose a material fact within its knowledge prior to the consummation thereof. The issue of whether, in view of Jim Letts' efforts to publicize the fact, the Neumans were diligent in apprising themselves of the production origin of their automobile engine or whether Jim Letts' concealment, if any, can be characterized as "done in such a manner as to deceive and mislead" (Code Ann. § 105-302) remains, on the record before us, a jury question. Nor can we agree that appellant's allegations of damage flowing from the concealment have been pierced. See *Millirons v. Dillon,* 100 Ga. 656 (2), supra. Though a different result might be reached if Jim Letts' motion were for directed verdict rather than summary judgment, *Genson v. The Varsity,* 129 Ga. App. 721 (201 SE2d 156) (1973), we are unable to agree that Jim Letts was erroneously denied summary judgment as to the fraudulent misrepresentation damages claim premised upon the alleged concealment of the Chevrolet engine. It was, however, for the reasons discussed in Division 1, above error to deny Jim Letts summary judgment as to appellant's claim for rescission of the contract.

As to the sun roof we find no genuine issue of material fact remaining. Under the uncontroverted evidence in the record before us, Jim Letts did not make a misrepresentation of material fact with regard to the sun roof. The simple statement that the sun roof, if installed locally, would be "similar" to that installed at the factory is not an actionable misrepresentation. See generally *Bryant v. Branch,* 142 Ga. App. 189, 190 (2) (235 SE2d 688) (1977). Furthermore, the record affirmatively demonstrates that appellant is estopped from asserting that there was reliance upon any alleged misrepresentation concerning the sun roof. See generally *Holbrook v. Capital Auto Co.,* 111 Ga. App. 601 (142 SE2d 288) (1965). Thus the issue of the sun roof has been removed from the case, and summary judgment was erroneously denied to Jim Letts as to any claim based upon a fraudulent misrepresentation concerning that part of the automobile.

6. Jim Letts next asserts that its motion for summary judgment was erroneously denied as to appellant's claims under the FBPA. As discussed in Division 5 above, there was no actionable misrepresentation concerning the sun roof and that issue has been effectively eliminated from the case as a possible unfair or deceptive act or practice. Compare *Attaway v. Tom's Auto Sales,* 144 Ga. App. 813 (242 SE2d 740) (1978). It was error to deny summary judgment as to appellant's FBPA claim premised upon alleged misrepresentations concerning the sun roof.

With reference to the FBPA claim based upon the Chevrolet engine however we cannot say that summary judgment was erroneously denied to Jim Letts. Contrary to Jim Letts' assertions, the notice it received complied, though barely, with the mandate of Code Ann. § 106-1210 (b). See *Colonial Lincoln-Mercury v. Molina,* 152 Ga. App. 379, 382 (9) (262 SE2d 820) (1979). While we agree that, in view of the uncontroverted evidence of the actions taken by Jim Letts to publicize the fact that some Oldsmobiles contained Chevrolet engines, it perhaps strains credulity to find that it intentionally and with culpable knowledge concealed that fact from the Neumans (*Colonial Lincoln-Mercury v. Molina,* 153 Ga. App. at 383 (11), supra), we are constrained to hold that, on the record before us, the issue of Jim Letts' intent to deceive, if it did in fact conceal the true circumstances, remains a jury question. See *Central Chevrolet v. Campbell,* 129 Ga. App. 30 (4) (198 SE2d 362) (1973). Therefore, we conclude that summary judgment was not erroneously denied Jim Letts as to the FBPA claim premised upon the engine. In so doing "we are compelled to state that '[i]f the motion were for directed verdict and the evidence were the same, or substantially so, we might very well reach a different result.' [Cit.]" *Tri-Cities Hospital Auth. v.*

*Sheats,* 156 Ga. App. 28, 32 (273 SE2d 903) (1980).

7. Jim Letts urges that it was erroneously denied summary judgment as to appellant's claim for violation of the Motor Vehicle Information and Cost Savings Act, 15 USCA § 1981, et seq. Appellant's claim in this regard is premised upon 15 USCA § 1988 (b) which prohibits the transferor of an automobile from violating prescribed rules governing the disclosure of odometer readings or from giving "a false statement to a transferee in making any disclosure required by such rule." Apparently at the time the Neumans accepted final delivery of the automobile the written disclosure statement of the odometer reading given them by Jim Letts reflected that it had been driven 2 miles "at time of resale or transfer . . ." It is undisputed that at the time of delivery the actual odometer reading was in excess of 2 miles. Construing the evidence most strongly in favor of appellant, the actual mileage as reflected on the odometer was at that time some 62 miles, a fact which was readily apparent to and was noted by appellant's son-in-law, who accepted delivery. It is the "false statement" on the odometer disclosure form that the actual mileage on the car was 2 rather than 62 miles, that appellant asserts was made by Jim Letts "with intent to defraud." 15 USCA § 1989 (a).

In support of its motion for summary judgment as to this count, Jim Letts introduced evidence to explain the approximately 60 miles discrepancy between the mileage on the disclosure form and the actual mileage on the odometer. That evidence demonstrated that the excess mileage was the result of the vehicle's delivery to and return from the local independent contractor for installation of the sun roof, a procedure which had indisputably been agreed to by the Neumans at the time the automobile was originally ordered. Appellant, in opposition to Jim Letts' motion for summary judgment, offered no evidence that the mileage discrepancy was the result of anything other than the legitimate pursuit of the agreed upon terms of the sale of the automobile or that Jim Letts had otherwise "changed" the actual odometer reading on the vehicle. Jim Letts asserts that on this evidence, appellant's claim that any violation of. the statute was made "with intent to defraud" has been pierced and that summary judgment was erroneously denied as to this count.

The federal statute is simply inapplicable under the facts of this case. "In enacting [15 USCA] § 1981, et seq., it was obviously the intent of Congress to prohibit fraud in the sale of automobiles by altering or tampering with a vehicle's odometer to show other than the actual amount of mileage traveled or by failing to reveal that the odometer did not reflect the actual mileage. In the case at bar it is not

contended that the odometer registered other than the actual mileage, . . . Thus, the provisions of § 1981 et seq. do not apply to the facts of this case, and the evidence is insufficient to support a finding of intent to defraud within the contemplation of the statute." Jack Criswell Lincoln-Mercury, Inc. v. Haith, 590 SW2d 616 (Tex. Cir. App. 1979). It is readily apparent that appellant's claim is based upon the fact that he did not receive a disclosure statement setting forth the exact mileage on the odometer rather than the fact that Jim Letts "changed" that odometer reading. "We fail to see how an intent to defraud can be inferred solely from a knowing failure to comply with the informational requirements of the Odometer Act . . . Rather, we agree with the overwhelming weight of authority that in order to impose liability under 15 USCA § 1989 (a), it must be proved that 'a change in the odometer reading has occurred and that the seller has failed to disclose the change.' [Cits.] [Appellant offered] no evidence indicating that the odometer reading had been changed." *Oden & Sims Used Cars v. McMullen,* 153 Ga. App. 127, 128-129 (264 SE2d 580) (1980). Accordingly, we find that summary judgment was erroneously denied to Jim Letts as to this count.

8. In Case Number 62208 the order is reversed insofar as it granted GM's motion for summary judgment on appellant's fraud and warranty claims seeking damages predicated upon the allegations concerning the engine. In all other respects, the order is affirmed.

In Case Number 62209, the order is affirmed insofar as it denied Jim Letts' motion for summary judgment on appellant's fraud and FBPA claims seeking damages predicated upon the allegations concerning the engine. In all other respects, the order is reversed.

*Judgment in Case Number 62208 affirmed in part and reversed in part. Judgment in Case Number 62209 affirmed in part and reversed in part. Deen, P. J. and Banke, J., concur.*

DECIDED NOVEMBER 23, 1981 —
REHEARING DENIED DECEMBER 8, 1981 IN CASE NO. 62208.

*Henry Angel, Michael Jablonski,* for appellant (case no. 62208).
*Byron Attridge, Ferdinand Buckley, David H. Cofrin, Chilton Varner,* for appellees (case no. 62208).
*Ferdinand Buckley, David H. Cofrin,* for appellant (case no. 62209).
*Michael Jablonski, Byron Attridge, Chilton Varner,* for appellee (case no. 62209).