**GUARANTEE TRUST LIFE INSURANCE COMPANY, Plaintiff,**

v.

**Ross J. WOOD, et al., Defendants.**

**Civ. A. No. C82–1897A.**

United States District Court, N.D. Georgia, Atlanta Division.

Jan. 27, 1984.

See also, D.C., 631 F.Supp. 22.

---

Thomas E. Magill, H. Sanders Carter, Jr., Carter, Ansley, Smith & McLendon, Douglas N. Campbell, Mitchell, Loggins, Campbell & Elsberry, Atlanta, Ga., for plaintiff.

Richard P. Decker, Robert A. Moss, Decker, Cooper & Hallman, Atlanta, Ga., for defendants.

### ORDER

MOYE, Chief Judge.

Before the Court in the above-styled civil action are cross-motions for complete or partial summary judgment and a motion to strike the affidavit of Mr. Dedrick.

*Part I. Case Background*

*Section A—Coverage by Guarantee Trust*

This is a diversity action involving coverage of $30,000.00 on the life of Kristofer Lee Wood ["Kristofer"] who died at the age of twenty-two of respiratory failure resulting from muscular dystrophy.

The plaintiff, Guarantee Trust Life Insurance Company ["Guarantee Trust"], ini-

tially paid death benefits to defendant, Ross J. Wood ["Wood"], under four $5,000.00 policies which were issued more than two years prior to the demise of Kristofer. The six $5,000.00 policies in question and their dates of issue are as follows:

| Policy Number | Date of Issue |
| --- | --- |
| 1) 320281 | March 26, 1977 |
| 2) 327216 | May 9, 1977 |
| 3) 333012 | May 24, 1978 |
| 4) 334386 | June 5, 1978 |
| 5) 355456 | February 28, 1981 |
| 6) 356526 | March 15, 1981 |

The first four policies designated Wood as beneficiary. The last two policies designated "Insured's Estate" as beneficiary. For that reason, Kristofer's remaining heirs-at-law are parties to this action, but only with respect to the last two policies.

The first four applications, which were submitted by Wood as "parent" and "beneficiary", included the following question and answer:

5. To the best of your knowledge, is the applicant to be insured free from physical defects? If answer is No—enclose full particulars with dates.

Answer: Yes.

The two most recent applications were submitted in 1980, when Kristofer was twenty-one years old and were signed "Kris Wood." The two applications included the following question and answer:

5. To the best of your knowledge, is the applicant to be insured in good health and free from physical defects? If answer is No—enclose full particulars with dates.

Answer: yes.

In addition, each of the six policies contained the following incontestability clause:

This policy shall be incontestable after it has been in force during the lifetime of the Insured for two years from its Date of Issue, except for nonpayment of premiums and except as to any provisions and conditions relating to benefits in event of total and permanent disability and those granting additional insurance against death by accidental means.

Wood filled out the applications, allegedly by instruction and with consent of Kristofer. The applications were then attached and made part of the policies by the insurance company.

Guarantee Trust brought this action to rescind the last two policies which were issued within two years of Kristofer's death, because of alleged misrepresentations in the applications, and for other relief. With regard to the first four policies, Guarantee Trust claims that at least two of the four policies are void *ab initio*, because the proposed insured, who was then an adult, neither applied for the policies nor consented to them in writing; that Guarantee Trust is entitled to recover the benefits paid under those void policies; and that Guarantee Trust is entitled to recover damages because of Wood's fraud, including all benefits paid under the first four policies, expenses of litigation, and punitive damages.

Guarantee Trust estimates that at Kristofer's death, approximately fifteen companies with total coverage exceeding one-half million dollars had issued life insurance to cover Kristofer.

Actions similar to the case at bar have been filed by Connecticut General Life Insurance Company ["Connecticut General"] in Civil Action Number C82–1896A; by Northwestern National Life in Civil Action Number C82–1896A; by Northwestern National Life Insurance Company ["Northwestern National"] in Civil Action Number C82–1898A; and by Delaware American International Life Insurance Company ["Delaware American"] in Civil Action Number C82–1899A, also resulting in counterclaims seeking payment of proceeds of policies. Wood filed suit in state courts against New York Life Insurance Company ["New York Life"] and National Benefit Life Insurance Company ["National Benefit"] seeking payment of unpaid proceeds under the policies among other relief. Those cases were removed to this Court, and counterclaims were filed by New York Life and National Benefit to rescind coverage and for other relief. *See* Civil Action Numbers: C82–

2886A and C82–2887A respectively. The six cases were consolidated for discovery purposes. At this time, cross motions for summary judgment and motions to strike are pending in all the cases. Although the cases involve many similar issues, the Court will issue individual orders so as to present clearly the pertinent facts and contentions of each case. The Court may, however, incorporate by reference portions of specific orders, rather than repeating the same material in each opinion.

### Section B—Kristofer's History of Muscular Dystrophy

From an early age, Kristofer was afflicted with muscular dystrophy. Kristofer was first diagnosed as having muscular dystrophy when he was approximately six years old. At that age, Kristofer was slower than his peers at doing physical things. By the age of seven, Kristofer needed leg braces in order to walk. Between the ages of nine and twelve, Kristofer became dependent upon a wheelchair for mobility. By the time he was fifteen, Kristofer was bedridden. From that time on, Kristofer was restricted to his bed, unless someone took him to other parts of the house.

In 1972, at the age of twelve, Kristofer was examined at the Emory University Clinic. Records from a November 1, 1972 visit disclosed that Kristofer showed classical findings of advanced dystrophy with difuse contractures, muscular atrophy, superhypertrophy of the calves, large tongue, and mild scoliosis. Records from April 1973, show that Kristofer was able to feed himself with ballbearing feeders, although dependent upon others for such activities as dressing. At that time, Kristofer was not able to walk or stand.

When Kristofer was nineteen, Dr. David E. Dalrymple, M.D., upon the request of Kristofer's mother, visited Kristofer at home. During that August 16, 1979 visit, Dr. Dalrymple noted that Kristofer had a tranquil outlook upon his destiny. Furthermore, in his affidavit Dr. Dalrymple indicated that Kristofer was not likely to survive beyond two or three years from the date of the visit and that Kristofer's demise would most probably be from recurrent respiratory causes.

Kristofer died at the age of twenty-two on January 13, 1982. The death certificate shows that the immediate cause of death was respiratory failure, a consequence of muscular dystrophy in this case.

### Part II—O.C.G.A. § 33–24–6(a)

The Court holds that policies 355456 and 356526 are void because Kristofer, an adult, neither signed the applications nor consented in writing to issuance of the coverage as required by O.C.G.A. § 33–24–6(a) (Ga.Code Ann. § 56–2407). That section provides in pertinent part as follows:

No life ... insurance contract upon an individual ... shall be made or effectuated unless at the time of the making of the contract the individual insured, being of competent legal capacity to contract, applies for a life ... insurance contract or consents in writing to the contract.

In the instant case, Wood admits that he filled out the insurance applications and signed Kristofer's name as applicant, allegedly with his son's oral consent and permission. Kristofer was considered a good "penman" and there was no physical reason why he could not have filled out and signed the applications. However, the Fifth Circuit in *Wren v. New York Life Insurance Company*, 493 F.2d 839 (5th Cir.1974), held that such consent does not satisfy the statute and therefore does not make these policies enforceable. The court in *Wren* pointed out that the purpose of the statute is to put beyond all doubt the issue of whether the coverage was obtained with the knowledge and consent of the individual insured. *Id.* at 841. Further, the purpose and requirement of the statute would be rendered meaningless if one could meet its terms by alleging written consent to have been verbally authorized, something the deceased insured would hardly be in a position to dispute. *Id., see also Allemen v. Lincoln National Life Insurance Co.,* 636 F.2d 1195 (10th Cir.1981). Because

Kristofer neither applied for the coverage nor consented thereto in writing, the Court concludes that policies 355456 and 356526 are void and unenforceable under O.C.G.A. § 33–24–6(a).

## Part III

### Section A—Incontestability Clause

The Court now turns to the issue of whether Guarantee Trust is barred by the incontestability clauses in policies 333012 and 334386 from arguing that the policies are void *ab initio* because the proposed insured, who was then an adult, neither signed the applications nor consented in writing to the issuance of the coverage as required by O.C.G.A. § 33–24–6(a).

The issued policies contain the following incontestability clause:

This policy shall be incontestable after it has been in force during the lifetime of the insured for two years from its date of issue, except for non-payment of premiums and except as to any provisions and conditions relating to benefits in the event of total and permanent disability and those granting additional insurance against death by accidental means.

Because policies 333012 and 33438 were issued on May 24, 1978, and on June 5, 1979, respectively and were not contested within two years of those dates, the policies fall beyond the specified period of general contestability.

Under Georgia law, an insurer is prohibited from issuing a policy unless it contains an incontestability clause. O.C.G.A. § 33–25–3 (Ga.Code Ann. § 56–2503). Under an incontestability clause, the insurer is, except as to certain conditions specified in the policy, precluded from asserting any defense based upon misrepresentations or warranties made by the insured in the application, whether fraudulent or otherwise. *Riley v. Industrial Life & Health Insurance Co.*, 190 Ga. 891, 11 S.E.2d 20 (1940). An incontestability clause provides the insured with an assurance that he will not face expensive litigation to uphold his policy after the lapse of a specified time while providing the insurer a reasonable time in which to ascertain whether the policy should remain in force. 1A Appleman, Insurance Law and Practice (J. Appleman) § 311 (1981).

■ Guarantee Trust argues that the policies are void *ab initio* and unenforceable notwithstanding the incontestability clauses in light of the strong public policy behind O.C.G.A. § 33–24–6(a) to protect the individual insured as well as the general public from physical danger and fraudulent claims. This argument is well taken. The court in *Wren, supra,* recognized that:

There has existed at common law a general rule establishing a public policy against the issuances of a policy of life insurance without the knowledge or consent of the person insured. It has been deemed that to allow the insuring of the life of a person without his knowledge or consent could be a contributing factor toward the commission of a crime, and would create a substantial risk to the unknown insured person. 44 C.J.S. Insurance § 241; 43 Am.Jur.2d, Insurance, § 242.

*Wren, supra,* 493 F.2d at 840, quoting approvingly from the district court opinion. While the purpose of the incontestability clause may be to protect the rights of beneficiaries and persons claiming under insurance policies, as well as the rights of the insured from expensive litigation, the Court cannot ignore the specific mandate of and overriding policy expressed by the Georgia Legislature to protect the public from physical danger and fraudulent insurance claims by requiring individuals insured to apply for or consent in writing to issuance of insurance. Consequently, in this case where the insured was eighteen years old and the insured neither filled out and signed the application nor consented in writing to the issuance of the coverage, the Court concludes that the policies are void *ab initio* as against public policy. Contrary to the position asserted by Wood, the incontestability clause in this case is simply not applicable and therefore not a bar to

the specific argument raised by Guarantee Trust.

### Section B—Recovery of Paid Proceeds

The Court now addresses the issue of whether Guarantee Trust is entitled to recover from Wood the proceeds of policies 333012 and 334386.

A general rule has developed that an insurer who pays proceeds under a policy with the knowledge of pertinent circumstances giving rise to a policy defense waives the right to recover those policy proceeds. 16A Appleman, Insurance Law and Practice § 9366 (1981). However, money paid through mistake of law with full knowledge of all the facts can be recovered if it appears that the person who received payment cannot in good conscience retain the money. *Whitehurst v. Mason*, 140 Ga. 148, 78 S.E. 938 (1913).

Wood points out that Mr. Wentz, vice president and head of the claims department of Guarantee Trust, testified during his deposition that Wood properly complied with all of the company procedures for making a claim. Further, Mr. Wentz stated that the company had all of the relevant information and documents concerning the claim before the proceeds were disbursed. In the February 19, 1982 letter enclosing payment of the first four policies, Mr. Wentz wrote in pertinent part as follows:

> In fact, with this knowledge [of Kristofer's medical history] we would not have issued any of the policies, but the other four contracts are incontestable and we are therefore honoring them without hesitation.

It is evident on the face of the two policies at issue that Kristofer, the insured, was an adult and that Wood, an adult, had applied for the policies.

■ Guarantee Trust paid the proceeds of the policies to Wood under the mistaken belief that the company was legally obligated to make the payments because of the running of the contestable period set forth in the policies. However, the Court holds on public policy grounds in Part III of this opinion, *supra*, that the policies are void and that the incontestability clauses are not applicable. Consistent with that holding, this Court agrees with Guarantee Trust that in equity and good conscience Wood is not entitled to retain the money. *See Department of Public Health v. Perry*, 123 Ga.App. 816, 182 S.E.2d 493 (1971); *Bracket v. Fulton National Bank*, 80 Ga.App. 467, 469, 56 S.E.2d 486 (1949). The Court notes that Wood has not presented a single reason why he should in equity and good conscience retain the proceeds.

### Part IV—Independent Action in Tort

Now the Court will determine whether Guarantee Trust may bring an action in tort against Wood to recover its alleged damages. Wood maintains that a cause of action in tort is barred by the incontestability clauses contained in the policies.

The incontestability clauses provide in pertinent part that the policies "shall be incontestable after [they have] been in force during the lifetime of the Insured for two years from [their] date of issue..."

Guarantee Trust contends that it can now bring an action affirming, rather than contesting, the policies seeking damages in tort for the deceit of Wood in applying for the insurance. The Court finds merit to this proposition. An independent action in tort based on fraud and deceit arising out of contract is not a suit for the violation of the contract but involves affirmance of the contract and the defrauded party may keep the benefits of the contract and maintain the action for the damages sustained by reason of the fraud. *Gem City Motors, Inc. v. Minton*, 109 Ga.App. 842, 846, 137 S.E.2d 522 (1964). When the alleged fraud is the concealment of a material fact that induced a contract, as in the instant case, the tort of fraud is complete at the time the contract is executed. *Preiser v. Jim Letts Oldsmobile, Inc.*, 160 Ga.App. 658, 661, 288 S.E.2d 219 (1981). The Court notes that in order for Guarantee Trust to recover in tort based upon fraudulent misrepresentation, it must allege and prove:

(1) that the defendant made representations;

(2) that at the time he knew the representations to be false (or what the law regards as the equivalent of knowledge); (3) that he made the representations with the intention and purpose of deceiving the plaintiff; and (4) that the plaintiff sustained the alleged loss and damages as the proximate result of the representations having been made.

*Gem City Motors, supra,* 109 Ga.App. at 844, 137 S.E.2d 522.

█ The Court concludes that Guarantee Trust, who has paid the proceeds of the policies to Wood, may now proceed in an independent action in tort for fraud and deceit to recover alleged damages from Wood. By affirming the policies and paying the proceeds thereunder, the insurance company avoids any conflict with incontestability clauses in the contracts.

## Part V

The Court now addresses the issue concerning recovery of litigation expenses and punitive damages.

Section 13-6-11 (Ga.Code Ann. § 20-1404) of the Official Code of Georgia Annotated provides as follows:

The expenses of litigation generally shall not be allowed as a part of the damages; but where the plaintiff has specially pleaded and has made prayer therefor and where the defendant has acted in bad faith in making the contract, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expenses, the jury may allow them.

With regard to contract disputes, this section means that expenses of litigation are recoverable when it is established that the contract was entered into in bad faith or was procured by fraud. *Canal Insurance Co. v. Lawson,* 123 Ga.App. 376, 379, 181 S.E.2d 91 (1971). If the jury determines that the defendant procured the contract through fraudulent and deceitful means, it is then authorized to consider the matter of attorney fees as an expense of litigation. *Roberts Pest Control Co. v. Mc-*

*Donald,* 132 Ga.App. 257, 260-61, 208 S.E.2d 13 (1974).

As for exemplary or punitive damages, they may not be awarded in cases arising on contract. O.C.G.A. § 13-6-10 (Ga.Code Ann. § 20-1405), *Pelletier v. Shultz,* 157 Ga.App. 64, 276 S.E.2d 118 (1981). While this litigation involves contracts of insurance, Wood's alleged fraud, if found by the jury, would amount to tortious conduct, authorizing an award of punitive damages. *Diana v. Monroe,* 132 Ga.App. 669, 672, 209 S.E.2d 70 (1974).

The Court concludes based upon the record that whether Guarantee Trust can recover expenses of litigation and punitive damages in this case should be determined by this Court upon a motion for directed verdict or by the jury upon conclusion of the trial.

## Part VI—Conclusion

█ In summary, the Court makes the following determinations:

1) That policies (nos. 355456 and 356526) are void *ab initio* under O.C.G.A. § 33-24-6(a) because Kristofer, an adult, neither applied for nor consented in writing to the issuance of insurance coverage;

2) That the running of the contestable periods provided in policies 333012 and 334386 does not bar Guarantee Trust from rescinding those policies as being void *ab initio* because Kristofer neither applied for nor consented in writing to the insurance coverage as required by O.C.G.A. § 33-24-6(a);

3) That Guarantee Trust, who paid the proceeds of policies 333012 and 334386 to Wood in the mistaken belief that the policies were incontestable when they were not (see 2 *supra*), is entitled to recover those proceeds because Wood cannot in good conscience retain the money;

4) That the incontestability clauses in policies 320281 and 327216 do not bar Guarantee Trust, who has paid the proceeds of those policies to Wood, from affirming the insurance contracts and seeking damages in tort for the fraud

and deceit of Wood with regard to representations made in the policy applications;

5) That litigation expenses are recoverable under O.C.G.A. § 13–6–11 by Guarantee Trust when it is established that the insurance contracts were entered into in bad faith or were procured by fraud;

6) That punitive damages cannot be awarded in cases arising on contract except when tortious conduct concerning the contract is alleged and proved;

7) That motions for litigation expenses and punitive damages are premature on the record now before the Court; and

8) That the affidavit of Mr. Dedrick, Guarantee Trust's vice president for underwriting, satisfies the requirements set forth in Fed.R.Civ.P. 56.[1]

For the reasons set forth in the body of this order, the Court GRANTS in part and DENIES in part the cross-motions for summary judgment and DENIES the motion to strike the affidavit of Mr. Dedrick.

---

1. Wood moves this Court to strike the affidavit of Mr. Dedrick, Guarantee Trust's vice president for underwriting, on the grounds that it is self-serving and conclusory and therefore without probative value and inadmissible. Rule 56(e) of the Federal Rules of Civil Procedure provides that an affidavit in support of a motion for summary judgment "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." The affidavit shows that it was made on personal knowledge and that the affiant is competent to testify as to the matters stated therein. The facts and testimony contained in the affidavit are relevant to issues presented in this case and are admissible at trial. The affidavit does not set forth bald conclusions, but rather, it identifies and explains objective underwriting standards which would have prohibited the issuance of the policies to any applicant with Kristofer's health history. The Court notes that Mr. Dedrick's

opinion would be admissible at trial under Fed. R.Evid. 701 and 702. Furthermore, the admissibility of the underwriting standards cannot be seriously questioned. Fed.R.Evid. 803(6). The issue of admissibility of the affidavit is an evidentiary question, procedural by nature, that is governed by federal, rather than state law. *Erie Railroad Co. v. Thompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). *See also, Northwestern Insurance Co. v. Corley,* 503 F.2d 224 (7th Cir.1974). The Court DENIES Wood's motion to strike on the ground that the affidavit satisfies the requirements set forth in Fed.R.Civ.P. 56.

The Court notes, in addition, that Georgia courts have decided on summary judgment misrepresentation cases on the basis of affidavits showing that the policy would not have been issued had the true fact been known. *See, e.g., Sentry Indemnity Co. v. Brady,* 153 Ga.App. 168, 264 S.E.2d 702 (1980); *Bridges v. World Service Life Insurance Co.,* 134 Ga.App. 923, 216 S.E.2d 714 (1975).