### 64351. BILL SPREEN TOYOTA, INC. v. JENQUIN.

DEEN, Presiding Judge.

Amy Jenquin made a trade with the defendant appellant, turning in her car and purchasing a secondhand vehicle described in the sale contract as a "used 1974 Celica Toyota coupe, identification number RA21-129922" for a total price of $3,792.14. The bill of sale

specified "AS IS" and, under comments, "No warranty expressed or implied." Plaintiff discovered 10 weeks after the sale and after the vehicle began leaking badly that it was not the vehicle represented in the bill of sale, but that the original vehicle described as the Toyota coupe RA21-129922 had, prior to this transaction, been badly wrecked, which resulted in the car being "clipped" or "sectioned"; that is, the rear end from the front windshield posts and along the inner floor pan behind the front seats had been cut off and the rear half of some other unidentified vehicle had been welded onto the front half, after which the car had been repainted and damage hidden as far as possible, with bonding, repainting, removal of identifying numbers on the rear portion of the vehicle, and so on. The jury returned a verdict in favor of the plaintiff for actual and punitive damages and attorney fees. Defendant appeals.

1. "Fraud ordinarily gives the injured party the right either to rescind the contract, or, by affirming the same, to claim damages. *Barfield v. Farkas,* 40 Ga. App. 559 (150 SE 600); *Wright v. Zeigler,* 70 Ga. 501 (5)." *Brown v. Ragsdale Motor Co.,* 65 Ga. App. 727, 730 (16 SE2d 176) (1941). " 'A suit for damages by the defrauded party for the fraud committed is not a suit for the violation of the contract, but is one for a tort and involves affirmance of the contract, and he may keep the fruits of the contract and maintain an action for the damages suffered by reason of the fraud.' *Tuttle v. Stovall,* 134 Ga. 325, 329 (67 SE 806, 20 AC 168); *Gem City Motors v. Minton,* 109 Ga App. 842 (1 c) (137 SE2d 522)." *Central Chevrolet v. Campbell,* 129 Ga. App. 30 (2) (198 SE2d 362) (1973). That the plaintiff may elect whether to rescind the contract for fraud or to affirm it and sue for damages, see *Preiser v. Jim Letts Oldsmobile,* 160 Ga. App. 658, 661 (288 SE2d 219) (1981); *Manget v. Cunningham,* 166 Ga. 71 (142 SE 543) (1927); *F. N. Roberts Pest Control Co. v. McDonald,* 132 Ga. App. 257 (1) (208 SE2d 13) (1974). In this action based on actual fraud the plaintiff elected to affirm the contract and sue for the resultant actual and punitive damages and attorney fees.

2. Here, the contract of sale contains a disclaimer of warranties and a statement that the vehicle is being purchased as is. Such a statement does not, however, negate the subject matter of the sale, and when a vehicle is sold under a sale contract which, while disclaiming warranties, represents that the car is either new or a demonstrator as opposed to one previously owned by a purchaser, an action for fraud is not precluded by the disclaimer of warranty. *Gem City Motors v. Minton,* 109 Ga. App. 842 (137 SE2d 522) (1964). The term "sold as is" means sold in its present condition without any warranty as to soundness of condition or suitability for the purpose intended, and a fraud action cannot rest on a contradictory oral

representation. *Findley v. Downing Motors,* 79 Ga. App. 682 (54 SE2d 716) (1949). A "waiver of all warranties" does not waive the language of the invoice purchase order or bill of sale which sets out the terms of sale. "These terms constitute the very subject matter of the sale, without which there would be none. The seller could not, thus binding himself to the sale of a Pontiac automobile [as the bill of sale described the vehicle], substitute therefor a cheaper make and contend that the purchaser has waived one of the terms of the sale *contained in the instrument itself." Nichols v. Williams Pontiac, Inc.,* 95 Ga. App. 752 (4) (98 SE2d 659) (1957). See also *Aderhold v. Zimmer,* 86 Ga. App. 204 (71 SE2d 270) (1952). As Judge Sognier stated in *Century Dodge v. Mobley,* 155 Ga. App. 712, 713 (272 SE2d 502) (1980) (cert. denied): "[W]e hold it is unreasonable to allow an express warranty contained in a contract (the description as 'new') to be negated by a disclaimer of warranty in the same contract, for the two provisions are not consistent with each other."

Under the "AS IS" on the bill of sale in the present case is a statement that the dealer disclaims all warranties including implied warranties of merchantability or fitness for a particular purpose. This is almost the exact language of the *Campbell* case, 129 Ga. App. 30, supra, where it was held that a disclaimer of implied warranty of merchantability or fitness for a particular purpose did not overcome a contrary description of the article by name, year and serial number as the latter "is an express warranty, not as to the condition but as to the identity of the goods sold." Here, the disclaimer of warranty has no effect on the statement of the subject matter of this sale as a "Used 1974 Toyota 2 dr cpe Celica, Identification # RA21-129922." The purchaser did not receive the car which was the subject matter of the sale, the only vehicle manufactured of the stated year, model and identification number. It received one half of the described subject matter of the sale welded to one half of another unidentified and unidentifiable automobile. In this condition the misidentification of goods sold is far greater than merely writing in an erroneous year model or an erroneous "N" indicating the vehicle is a new car rather than having been used. We accordingly conclude that the disclaimer of warranties is not a sufficient defense against this action for deceit. The conclusion is different where it appears from the contract that the purchaser relied entirely on his own inspection of the merchandise. *White v. General Discount Corp.,* 60 Ga. App. 186 (3 SE2d 214) (1939). *Culverhouse v. Wofford,* 86 Ga. App. 58 (70 SE2d 805) (1952) cited by the appellant is irrelevant as it dealt only with a question of pleading under former demurrer rulings which no longer obtain.

It might further be noted, if one were to argue that the

reconstituted vehicle sold to the plaintiff was as described, that it also lacked all identification numbers on the back half, and their location had in fact been concealed by filling and paint, involving a removal and concealment of identifying marks. The knowing possession of a car so reassembled except under a license to rebuild is a felony. Code § 68-9916, and see *Martin v. State,* 160 Ga. App. 275 (287 SE2d 244) (1981). The identification (VIN) numbers of automobiles make up the very essence of the individual article being marketed, and it is clear that some are concealed in inconspicuous parts of the vehicle in an attempt at prevention of the very act carried out on this car. Such evidence will not, of course, bolster an action based on constructive fraud on the ground that the seller's knowledge and experience is greater than that of the buyer. *Derryberry v. Robinson,* 154 Ga. App. 694 (269 SE2d 525) (1980). It may, however, be relevant to the question of whether an inference against the innocence of the seller might properly be drawn from the facts stated, since knowing possession of such a vehicle may be a crime, a fact which it may be presumed dealers in used cars are aware of on the basis that everyone is presumed to know the law.

3. Since there is no accusation or hint that the defendant here actually performed the "clip" uniting the halves of two presumably wrecked vehicles, the appellant contends that plaintiff has proved neither scienter nor intent to defraud, necessary ingredients of this tort action. *Cheney v. Barber,* 144 Ga. App. 720 (242 SE2d 358) (1978); *Leatherwood v. Boomershine Motors,* 53 Ga. App. 592 (186 SE 897) (1936). "In all cases of deceit, knowledge of the falsehood constitutes an essential element. A fraudulent or reckless representation of facts as true, which the party may not know to be false, if intended to deceive, is equivalent to a knowledge of the falsehood." Code § 105-302; *Lively v. Garnick,* 160 Ga. App. 591 (287 SE2d 553) (1981). To be actionable the misrepresentations must be made with the intention of deceiving another, and the defendant at the time must either know they were false *or what the law regards as the equivalent of knowledge. McLendon v. Galloway,* 216 Ga. 261 (2) (116 SE2d 208) (1960). What one may not do is to turn his head away and blind himself to the truth or falsity of a condition which he recklessly represents to his own advantage. Such refusal to know, like admitted knowledge, involves actual, moral guilt. *Wooten v. Calahan,* 32 Ga. 382, 386 (1961); *Penn Mut. Life Ins. Co. v. Taggart,* 38 Ga. App. 509, 511 (1-b) (144 SE 400) (1928); *Dundee Land Co. v. Simmons,* 204 Ga. 248 (1) (49 SE2d 488) (1948). Knowledge is an essential element, but "the reference . . . to fraudulent or reckless statements represented as true, which the party may not know to be false, if intended to deceive, is intended to declare what may amount to

knowledge." *Camp v. Carithers,* 6 Ga. App. 608 (4) (65 SE 583) (1909). "The intention to deceive and the immoral element are supplied by knowledge of the falsity of the representations when they were made." *Bagley v. Firestone Tire &c. Co.,* 104 Ga. App. 736, 740 (123 SE2d 179) (1961). The intent which constitutes an essential element of fraud is an intent that the representation be acted upon by the other party. *Daugert v. Holland Furnace Co.,* 107 Ga. App. 566 (130 SE2d 763) (1963). It is a jury question except in plain and palpable cases. *Brown v. Techdata Corp.,* 238 Ga. 622 (234 SE2d 787) (1977). Likewise, whether the misrepresentation is fraudulent is a jury question. *Ga. International Life Ins. Co. v. King,* 120 Ga. App. 682 (172 SE2d 167) (1969).

Is there sufficient evidence to support a jury finding that the defendant misstated the subject matter of this sale recklessly, knowing of the clip or avoiding knowledge because of failure or refusal of the employees involved with this automobile to examine it when a cursory examination upon either purchase or resale would have divulged the fact that it was illegally reassembled and could not be sold under the license umbrella it had assumed? Defendant's used car sales manager testified that he test drove the vehicle and found it drove well, but in point of fact he sent the vehicle through the service department with a note that it was pulling to the side. He admitted routinely checking the trunk but said he found nothing irregular there, yet it is clearly established by other evidence that he directed the car to be repainted and that the overspray of the back portion which concealed the original paint job was clearly visible in the trunk and other places, as being different from the underlying paint in the front. This witness, who had been in the industry for seven years, knew that vehicle identification (VIN) number plates were routinely placed on the door jamb of Toyotas yet claimed he did not notice both that the plate at that location (controlling the back part of the car) was missing and the holes to which the plate should have been secured were filled in with a bonding substance and painted over, yet other witnesses testified every such Toyota bore the nameplate as a matter of routine, a fact which would be obvious to anyone in the automobile industry. In view of the fact that mere knowing possession of such a car unless properly licensed as such would constitute a felony the jury might well not have believed the defendant's principal witness when he informed them that he never noticed the missing identification, that the overspray of paint did not raise any suspicions in his mind, and that he simply did not know the car had been clipped, although a glance under the car body would irrefutably have established the prominent weld which united the two automobile parts. Spreen, the defendant's president, was no

more helpful and simply denied ever looking at the car. Drain, the salesman from whom the plaintiff purchased, was never placed on the stand nor was his absence attempted to be accounted for. Failure to produce evidence which is within the power of a litigant by which he may repel a charge against him may give rise to a presumption that the charge is well founded. Code § 38-119. Fraud, being itself subtle, may be proved by slight circumstances. It is clear that the clip was not "obvious" if one simply stood by the automobile and looked at it, but it was "obvious" if one bothered to put it on a rack (as this car must have been at least while being repainted at the defendant's garage). Witnesses testified that the problems with the windshield, rough finish on two windshield door posts, absence of sticker on door or sill plate and like discrepancies would make the car difficult to sell if "moving to a knowledgeable buyer," that they were unusual and it was common knowledge, at least among dealers, that the identifying VIN should be present. There is thus ample evidence to raise a jury question as to whether the defendant knew, or recklessly failed to ascertain the truth or falsity, of the representation it made as to the identity of the merchandise sold. We cannot agree with the defendant that under the circumstances here shown the clip should be considered as a mere non-warranted "repair" or that the merchandise described in the sale contract was in fact received by the plaintiff.

4. No error appears in admitting evidence of or in the instructions regarding actual damages. It is well settled that the measure of damages in a tort action such as this is the difference in value at the time of delivery between its actual value and the value it would have had if it were as represented. *Murdock v. Godwin,* 154 Ga. App. 824 (269 SE2d 905) (1980). The jury was given all facts available — the value of the automobile traded, the purchase price of the Toyota, and the value of the car in its actual condition. The market value upon discovery of the clip, that is about 10 weeks after purchase, was also established. No change in its condition during this 10-week period has been suggested. The evidence was not insufficient as a matter of law. *Atlantic C. L. R. Co. v. Clements,* 92 Ga. App. 451 (88 SE2d 809) (1955). "Automobiles today are items well within the common knowledge of everyone including jurors." *Gwinnett Commercial Bank v. C & S Bank,* 152 Ga. App. 137, 141 (262 SE2d 453) (1979).

The defendant's witness testified on cross-examination that the trade-in vehicle was resold two days after the purchase transaction, netting the dealership a profit of $666.00. This statement was objected to as irrelevant because profit was not an issue and the objection overruled, apparently on the ground that it was "part of the

overall transaction." The right to a thorough and sifting cross-examination is inherent in the fair trial concept. Code § 38-1708. Its scope rests largely within the discretion of the trial judge. *Goldgar v. Galbraith,* 155 Ga. App. 429 (3) (270 SE2d 833) (1980). The purchase and resale of the trade-in vehicle already being in evidence, there was no error in allowing the jury to know the monetary details of the transaction. The same applies to testimony that a work order for repairs charged back to the vehicle in defendant's records was in error was also admitted, as this testimony had some bearing upon the overall value of the merchandise.

5. The court's instructions on the law of fraud were not entirely accurate. Exception is taken to the charge of Code § 37-703: "Misrepresentation of a material fact, made wilfully to deceive, or recklessly without knowledge, and acted on by the opposite party, or if made by mistake and innocently and acted on by the opposite party, constitutes legal fraud." It is also taken to the giving in charge of certain language which appears in *Boroughs v. Belcher,* 211 Ga. 273 (1) (85 SE2d 422) (1955) as follows: "A fraudulent or reckless representation of facts as true, even if the party may not know them to be false, if intended to deceive, is equivalent to knowledge of the falsehood. Code § 105-302. Whether or not a party who misrepresents a fact knows it to be false is immaterial, for the affirmation of what is not known to be true, or believed to be true, is equally, in morals or law, as unjustifiable as the affirmation of what is positively known to be false." It is also complained that he committed reversible error in charging: "Concealment of material facts may amount to fraud when direct inquiry is made, and the truth evaded, or where the concealment is of intrinsic qualities of the article which the other party by the exercise of ordinary prudence and caution could not discover." This latter is taken from language in *Batey v. Stone,* 127 Ga. App. 81 (192 SE2d 528) (1972) and is both a correct statement of the law and applicable to the present case if the jury found that the defendant concealed an intrinsic quality of the Toyota, namely, that it was in fact not one vehicle but halves of two vehicles welded together.

The charge as a whole was full and fair. In addition to the portions above complained of, the jury was instructed that a mere breach of contract did not constitute legal fraud; that a misrepresentation constituting actual fraud may give rise to an independent action in tort but it is necessary to show that any misrepresentations were knowingly false or that the party pretended to know something he did not know and used the false pretense with the purpose and intent to deceive, that a design to deceive is the gist of the action, either through knowledge or not knowing or caring

whether it was true or false; that if the representation was honestly made and believed without an intention to deceive the purchaser, the defendant would not be liable, and again "you must not only find that in the exercise of ordinary care the defendant should have known the vehicle was not as represented but that such representation was made recklessly and with the intention of deceiving the purchaser."

Thus, in the entire charge in which the correct rule was stated many times, the court only once confused the difference between actual and constructive fraud in that he charged that part of Code § 37-703 which refers to constructive fraud by stating that a misrepresentation made either wilfully or recklessly without knowledge *or by mistake and innocently* and acted on by the opposite party constitutes legal fraud. The statement is true since both actual fraud and constructive fraud constitute legal fraud. *Cowan v. Bank of Rockdale,* 159 Ga. 123, 126 (125 SE 194) (1924). However, constructive fraud does not, and actual fraud does, involve moral guilt. *Midtown Chains Hotel Co. v. Merriman,* 204 Ga. 71, 73 (48 SE2d 831) (1948); *Dundee Land Co. v. Simmons,* 204 Ga. 248 (1), supra. The court made it abundantly clear in the general instructions that only those portions of Code § 37-703 involving a knowingly false statement or a recklessly made misrepresentation without knowledge but with intent to deceive could constitute actual fraud, and that only on actual fraud could the plaintiff recover. No reversible error appears.

6. Appellant's fifth enumeration of error is disposed of by the second division of this opinion. The contention that the award of substantial punitive damages and attorney fees shows bias and prejudice is without merit. No reversible error appears.

*Judgment affirmed. Quillian, C. J., McMurray, P. J., Shulman, P. J., Birdsong, Carley and Pope, JJ., concur. Banke, J., concurs in the judgment only. Sognier, J., dissents.*

DECIDED SEPTEMBER 7, 1982 —
REHEARING DENIED OCTOBER 14, 1982 —

*Stephen H. Block,* for appellant.
*Carol D. Sweet,* for appellee.

SOGNIER, Judge, dissenting.

I respectfully dissent. Two procedures are available to a buyer seeking to recover from a seller for alleged misrepresentation in connection with a sale. The buyer can affirm the contract and sue for damages resulting from the fraud or the buyer may rescind the contract and sue in tort for the alleged fraud and deceit. *City Dodge v.*

*Gardner,* 232 Ga. 766 (208 SE2d 794) (1974); *Eastern Motor Co. v. Lavender,* 69 Ga. App. 48 (24 SE2d 840) (1943); *Brown v. Ragsdale Motor Co.,* 65 Ga. App. 727 (16 SE2d 176) (1941). Appellee/plaintiff elected to affirm the contract and seek damages. " 'Where one who is induced to contract by the fraudulent misrepresentations of the other party elects to affirm the contract and seek damages, he is bound by the provisions of the contract and may not recover if any of the contractual provisions preclude him from establishing any of the five essential elements of an action in tort for fraud and deceit.' " *Hannah v. Shauck,* 131 Ga. App. 834, 835 (1) (207 SE2d 239) (1974). *Condios, Inc. v. Driver,* 145 Ga. App. 537, 538 (244 SE2d 85) (1978). One of the elements of fraud is justifiable reliance by the plaintiff. *City Dodge,* supra at 770; *Condios,* supra at 538. A disclaimer clause prevents the buyer from asserting reliance and, thus, there can be no recovery for fraud based on representations made prior to execution of the contract. *Floyd v. Woods,* 110 Ga. 850 (36 SE 225) (1900); *Holbrook v. Capital Auto. Co.,* 111 Ga. App. 601 (142 SE2d 288) (1965).

The bill of sale executed by appellee in the instant case specified that the vehicle was sold "AS IS." "[A]ll implied warranties are excluded by expressions like 'as is,' 'with all faults . . .' " Code Ann. § 109A-2—316 (3) (a); *Harison-Gulley Chevrolet v. Carr,* 134 Ga. App. 449, 451 (214 SE2d 712) (1975); *Hutchinson Homes v. Guerdon Industries,* 143 Ga. App. 664, 665 (239 SE2d 553) (1977). The term "sold as is," when contained in a contract for the sale of personalty, means that the buyer takes the article in its then present condition without implied warranty as to the soundness of condition or suitability for the use or purposes intended. *Findley v. Downing Motors,* 79 Ga. App. 682 (54 SE2d 716) (1949); *Lancaster v. Eberhardt,* 141 Ga. App. 534 (1) (233 SE2d 880) (1977); *Hutchinson Homes,* supra at 665.

Appellee, having signed the sales contract, cannot now rest her claim on the dealer's silence as to the condition of the car. In buying a used car "as is," appellee assumed the risk that the car had not been rebuilt ("clipped"). The same rule has been applied to the use of disclaimers of express and implied warranties. See *Attaway v. Tom's Auto Sales,* 144 Ga. App. 813 (242 SE2d 740) (1978); *Rogers-Farmer &c., Inc. v. Barnett,* 125 Ga. App. 494 (188 SE2d 122) (1972).

Successful actions on the contract have been maintained when the contract described the automobile as new when in fact it was used, and when the contract described a vehicle as a 1967 model when in fact it was a 1963 model. *Century Dodge v. Mobley,* 155 Ga. App. 712, 713 (272 SE2d 502) (1980); *Central Chevrolet v. Campbell,* 129 Ga. App. 30 (198 SE2d 362) (1973). Under the provisions of Code Ann. §

109A-2-318 (1) (b) such a description contained in the contract is a part of the bargain and creates an express warranty that the goods will conform to that description. The conflict between the express warranty and disclaimer of warranties is resolved under Code Ann. § 109A-2—316 (1) providing "[w]ords or conduct relevant to the creation of an express warranty and words or conduct tending to negate or limit warranty shall be construed wherever reasonable as consistent with each other; but subject to the provisions of this Article on parol or extrinsic evidence (109A-2—202) negation or limitation is inoperative to the extent that such construction is unreasonable." Hence, an express warranty contained in a contract (in the description) is not negated by a disclaimer of warranty. *Century,* supra; *Gem City Motors v. Minton,* 109 Ga. App. 842 (137 SE2d 522) (1964). See also, *Nichols v. Williams Pontiac,* 95 Ga. App. 752 (98 SE2d 659) (1957); *Central Chevrolet,* supra.

The majority would extend the rulings in *Century,* supra, and like cases to provide that the serial number RA21-129922 presented on the face of the contract in the description acted as an express warranty that the automobile was one car, not halves of two separate cars welded together. Thus, in resolving this apparent conflict between description and actuality, an express warranty would be created that the automobile was one, not halves of two cars. Such a holding strains the rule of *Century,* supra. Appellee was sold one car "as is." There was no express or implied warranty that the car had not been rebuilt ("clipped"). The mere notation of a serial number, absent more, does not act as an express warranty that a vehicle has not been rebuilt ("clipped").

The majority opinion implies that owning such a rebuilt ("clipped") car is per se illegal. This is not supported by the record, as a rebuilt car, upon application, could be retitled. See Code Ann. § 68-420a prior to the 1981 amendment.

The sale in the instant case occurred prior to January 1, 1982, the effective date of Code Ann. § 68-420a.1, which governs the sale of rebuilt cars after that date. This section provides for the inspection of all rebuilt motor vehicles and requires that dealers obtain certificates of title marked "rebuilt" for these automobiles. This statute, designed for the protection of both customers and dealers, will lessen the possibility of misrepresentations in future sales, because the certificate of title gives notice to a prospective purchaser that the vehicle has been rebuilt.

The majority opinion does violence to the provisions of Code Ann. § 109A-2—316 (3) (a); therefore, I would reverse.