THOMAS, Judge.
Richard W. La Trace, Sr., appeals from an order of the Marion Circuit Court entering a summary judgment in favor of Ray Webster, Deborah Webster, Bo Webster, and Laura Webster (collectively “the Websters”), the owners and operators of B & B Antiques & Auctions (“B & B”), on all nine claims brought by La Trace arising out of several purchases that La Trace made at a March 2000 auction. We affirm in part, reverse in part, and remand.
La Trace filed a complaint on February 22, 2005, in which he named as defendants “B & B Antiques, Auction & Realty, LLC,” the Websters, and several fictitiously named defendants. La Trace claimed that he had attended a B & B auction conducted over several days in March 2000 and had purchased a number of items, including five lamps that were identified at the auction as “Tiffany” lamps and one lamp shade that was also identified at the auction as a “Tiffany” product (hereinafter, the lamps and the lamp shade will be referred to collectively as “the lamps”). La Trace spent a total of $56,200 on the lamps.
La Trace claimed that a B & B brochure had attracted him to the auction. La Trace also claimed that, in August 2003, he had contacted Fontaine’s Auction Gallery in Pittsfield, Massachusetts, to inquire about selling the lamps in an auction. La Trace claims that Fontaine’s sent Dean Lowry, an expert in Tiffany products, to *1213 examine La Trace’s lamps and that Lowry determined that the lamps were not authentic Tiffany products but were, in fact, reproductions. Based on those facts, La Trace presented in his complaint various claims against the defendants, including claims alleging fraudulent suppression, fraudulent misrepresentation, breach of warranty, breach of contract, negligence, wantonness, and a violation of § 8-14-2B, Ala.Code 1975. La Trace filed an amended complaint on March 31, 2005, in which he claimed that, before the auction, Willis McKiness had sold, transferred, or consigned to B & B the lamps that La Trace had purchased, and La Trace added McKiness as an additional defendant. The defendants answered the amended complaint on June 6, 2006.
On April 26, 2007, the Websters filed a motion for a summary judgment. The Websters first claimed in their motion for a summary judgment that B & B was not a limited liability company and that the named defendant, “B & B Antiques, Auction & Realty, LLC,” was not an existing legal entity. The Websters argued that “B & B Antiques, Auction & Realty, LLC,” should be dismissed from the case as a defendant.
The Websters next argued that all La Trace’s claims, except for his § 8-14-23 claim, were barred by various disclaimers, warnings, and provisions of which the Websters had made La Trace aware and to which La Trace had explicitly agreed. The Websters attached to their motion for a summary judgment a sample of the brochure that initially attracted La Trace to the auction at issue, and they pointed out that the brochure contained the following statement under the heading “Conditions of Sale”:
“1. All property is sold AS IS WHERE IS, and we make NO guarantees, warranties or representations, expressed or implied, with respect to the property or the correctness of the catalog or other description of authenticity of authorship, physical condition, size, quality, rarity, importance, provenance, exhibitions, literature or historical relevance of the property or otherwise. No statement anywhere, whether oral or written, shall be deemed such a guarantee, warranty or representation. Prospective bidders should inspect the property before bidding to determine the condition, size and whether or not it has been repaired or restored and no refunds or credits shall be issued.”
(Capitalization in original.)
The Websters also attached to their summary-judgment motion a document entitled “Conditions of Auction,” which the Websters claim La Trace signed before the March 2000 auction. That document contained the following provisions, among others:
“1. All property is sold AS IS, WHERE IS, and we make NO guarantees, warranties or representations, expressed or implied, with respect to the merchandise. This includes but is not limited to the correctness of the catalog, authenticity of merchandise as to age, quality, description, rarity, size, importance, provenance, physical description, historical relevance, condition, or authorship of any property. NO statement anywhere, whether oral or written, shall be deemed such a guarantee, warranty or representation.
“3. Prospective Bidders should inspect the property before bidding to determine the condition, size, age, provenance, artist, and whether or not merchandise has been repaired or restored. The Bidder is solely responsible for determining the condition of all merchandise to his or her satisfaction. *1214 B & B Antiques & Auctions are not and cannot be held responsible for the determination of the Bidder as to any condition, age or provenance of the merchandise. NO refunds or credits shall be issued.”
(Capitalization in original.)
The Websters also attached copies of the individual sales slips/receipts that memorialized the transfer of the merchandise from B & B to La Trace. Those sales slips all contained the following provision: “ALL [MERCHANDISE] SOLD AS IS. ALL GUARANTEES MADE BETWEEN SELLER & BUYER. WE ACT AS AGENTS ONLY.” (Capitalization in original.)
In addition, the Websters attached to their motion for a summary judgment the affidavit of Willis McKiness, in which MeKiness stated, in part:
“I did, in fact, consign to [B & B] all of the lamps which were signed Tiffany as well as many other signed items. Having dealt with this type of merchandise for many years, I believed all of the goods to be authentic and informed the Websters that I believed the goods, including the lamps, to be authentic.”
The Websters argued in their motion for a summary judgment that any oral representations made by the Websters in regard to the quality or authenticity of the lamps contradicted the clearly written conditions of the auction, which disclaim any express or implied warranties regarding merchandise purchased at the auction. The Websters argued that, because La Trace knew of and agreed to those conditions before participating in the auction, those written conditions superseded any oral representations, precluding La Trace from recovering on any of his claims except for the § 8-14-23 claim. As to the § 8-14-23 claim, the Websters argued that § 8-14-23 was simply inapplicable to the present case.
La Trace filed a brief in opposition to the Websters’ motion for a summary judgment, in which he argued that his claims were not barred by the conditions of the auction and that § 8-14-23 was applicable to the items he purchased at the auction. La Trace also filed an affidavit in support of his motion. In his affidavit, La Trace acknowledged that he had signed the “Conditions of Auction” document before participating in the auction. La Trace stated that the lamps that he purchased were not available for inspection before the auction. He also stated in his affidavit that when the lamps were brought out, the auctioneer instructed the auction participants not to handle the lamps because they were fragile. La Trace stated that when the lamps were auctioned off, the auctioneer identified the items as “Tiffany” items. La Trace stated that he had bid for and purchased the lamps based on the fact that the lamps had been represented to be Tiffany products. La Trace also stated that, after the auction was over, he had asked either Laura Webster or Deborah Webster whether the lamps he had purchased were authentic and that Laura or Deborah had assured him that the items he had purchased were authentic Tiffany products.
On July 9, 2007, the trial court entered the following judgment:
“This matter coming on or before the Court upon the Motion for Summary Judgment filed by the [Websters], and after consideration of said Motion, Narrative Summary and Exhibits, the opposition Brief and Exhibits of [La Trace], as oral argument by Attorneys for the parties, and the pleadings in this cause, the Court is of the opinion that said Motion for Summary Judgment is well taken and due to be granted.
*1215 “B & B Antiques, Auctions and Realty, LLC, is a nonexistent entity therefore the case against B & B Antiques, Auctions and Realty, LLC is dismissed.
“On January 4, 2006, the Defendant Willis McKiness died in the state of Georgia. A suggestion of death was properly filed on January 11, 2006. No action has been taken by [La Trace] to revive the action against the estate of Willis McKiness; therefore, the case against Willis McKiness is dismissed.
“[La Trace] attended and registered as a bidder at three (3) auctions which were conducted by [the Websters]. At all three auctions, [La Trace] signed and acknowledged the conditions of auction
“Sales Brochures were distributed at each of the three auctions which contained a half page listing of conditions of sale....
“When [La Trace] purchased items at the second and third auctions he received a sales slip for the items he purchased which stated ‘all merchandise sold as is, all guarantees made by the seller and buyer. We act as agents only.’ [La Trace] was familiar with and fully aware of the conditions of sale. Many items were made available for inspection prior to the auction in question. At no time did [the Websters] represent that they had ever sold authentic Tiffany lamps, had any special knowledge of authentic Tiffany lamps, or had done any investigation to determine whether or not these lamps were authentic. In reviewing the [Websters’] motion the Court has reviewed the record in a light most favorable to [La Trace], the non-moving party, and has resolved all reasonable doubts concerning the existence of a genuine issue of material fact against the [Websters], the moving party.
“The items auctioned were consigned items. Statements made by the auctioneer were based upon what he or she had been told by the owner of the property. Despite all the warnings printed in the brochure and placed on the bidder agreement, [La Trace] decided to bid on and ultimately purchase the items in question.
“It is the policy of Courts not only to discourage fraud but also to discourage negligence and inattention to one’s own interest. [La Trace] knowingly and intelligently acknowledged by signing the bidder form that he had been informed of the possibility that the items were not as represented. [La Trace] had a duty to exercise some measure of precaution to safeguard his interests. The circumstances are such that a reasonable, prudent person who exercised ordinary care would have conducted an independent investigation into the authenticity of the items in question.
“[La Trace] blindly trusted where he should not and closed his eyes when ordinary diligence required him to see.
“It is therefore Ordered, Adjudged and Decreed that there is no genuine issue as to any material fact and that the [Websters] are entitled to a judgment as a matter of law. Accordingly, the [Websters’] Motion for Summary Judgment is hereby granted and this cause is hereby dismissed with prejudice, with costs taxed to ... [La Trace].”
La Trace timely appealed the trial court’s final judgment to the supreme court. This case was transferred to this court by the supreme court, pursuant to § 12-2-7(6), Ala.Code 1975. On appeal, La Trace argues that the trial court erred in entering a summary judgment on his claims against the Websters.

*1216
Standard of Review

Appellate review of a summary judgment is de novo. Ex parte Ballew, 771 So.2d 1040 (Ala.2000). A motion for a summary judgment is to be granted when no genuine issue of material fact exists and the moving party is entitled to a judgment as a matter of law. Rule 56(c)(3), Ala. R. Civ. P. A party moving for a summary judgment must make a prima facie showing “that there is no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law.” Rule 56(c)(3); see Lee v. City of Gadsden, 592 So.2d 1036, 1038 (Ala.1992). If the movant meets this burden, “the burden then shifts to the nonmovant to rebut the movant’s prima facie showing by ‘substantial evidence.’ ” Lee, 592 So.2d at 1038 (footnote omitted). “[Substantial evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.” West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989); see § 12-21-12(d), Ala. Code 1975.

The Breach^of-Warranty, Breach-of-Contract, and Fraudulent-Misrepresentation Claims

La Trace first argues that the disclaimers relied upon by the Websters were not effective to bar his breach-of-warranty, breach-of-contract, and fraudulent-misrepresentation claims under §§ 7-2-313 and 7-2-316, AIa.Code 1975, part of Alabama’s version of the Uniform Commercial Code (“UCC”). We agree. Although La Trace denominates his breach-of-warranty, breach-of-contract, and fraudulent-misrepresentation claims as distinct claims, for the purposes of this case and as discussed below, the determination of whether the trial court properly entered a summary judgment as to each of those three claims rests on whether the alleged statements by the Websters could have created express warranties under the UCC. Accordingly, we will analyze those three claims together. See Gable v. Boles, 718 So.2d 68 (Ala.Civ.App.1998) (employing a breach-of-warranty analysis under § 7-2-313 to determine whether a buyer had a valid fraud claim in a dispute over a boat sale).
Sales at auction and the creation and disclaimer of warranties in the sale of goods are governed by the UCC. See §§ 7-2-328, 7-2-313, and 7-2-316, Ala. Code 1975; Travis v. Washington Horse Breeders Ass’n, Inc., 111 Wash.2d 396, 759 P.2d 418 (1988). In Travis, the Supreme Court of Washington held that a statement made at auction that a horse was “healthy and fit for racing and breeding purposes” was an express warranty that was not negated by disclaimers of warranty contained in the “Conditions of Sale” of the auction catalogue. 111 Wash.2d at 404, 759 P.2d at 422. Quoting from the Washington version of § 2-316(1) of the UCC (which is identical to § 7-2-316(1), Ala. Code 1975), the court explained:
“ Words or conduct relevant to the creation of an express warranty and words or conduct tending to negate or limit warranty shall be construed wherever reasonable as consistent with each other; but ... negation or limitation is inoperative to the extent that such construction is unreasonable.’
“See White & Summers, Unifoim Commercial Code 430 (2d ed.1980):
“ ‘If the factfinder determines that a seller’s statement created an express warranty, words purportedly disclaiming that warranty will have no effect, *1217 for the disclaiming language is inherently inconsistent.’ ”
111 Wash.2d at 404-05, 759 P.2d at 422.
Section 7-2-313 governs the creation of express warranties in a sale of goods and provides:
“(1) Express warranties by the seller are created as follows:
“(a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.
“(b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.
“(c) Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.
“(2) It is not necessary to the creation of an express warranty that the seller use formal words such as ‘warrant’ or ‘guarantee’ or that he have a specific intention to make a warranty, but an affirmation merely of the value of the goods or a statement purporting to be merely the seller’s opinion or commendation of the goods does not create a warranty.”
Section 7-2-316(1) provides that an express warranty cannot be disclaimed by language in a sales contract:
“Words or conduct relevant to the creation of an express warranty and words or conduct tending to negate or limit warranty shall be construed wherever reasonable as consistent with each other; but subject to the provisions of this article on parol or extrinsic evidence (Section 7-2-202) negation or limitation is inoperative to the extent that such construction is unreasonable.”
(Emphasis added.)
La Trace alleged in his complaint that the Websters described the lamps that he bought as “Tiffany” products during the auction. Alabama courts have held that statements by a seller that are mere sales talk or “puffery” do not give rise to express warranties. See Gable v. Boles, 718 So.2d 68 (Ala.Civ.App.1998). Examples of puffery include statements describing an item as “in good shape,” Scoggin v. Listerhill Employees Credit Union, 658 So.2d 376, 377 (Ala.1995), or “in good condition,” Pell City Wood, Inc. v. Forke Bros. Auctioneers, Inc., 474 So.2d 694, 695 (Ala.1985). On the other hand, as provided in § 7-2-313, representations of fact do give rise to express warranties. Gable, 718 So.2d at 70. This court has held that a statement by a seller of a boat to the effect that the boat was “winterized” was a statement of fact. Id. at 71. Similarly, this court has held that a statement by a seller of a trailer that the trailer was a 2000 model-year trailer was a statement of fact. Terrell v. R & A Mfg. Partners, Ltd., 835 So.2d 216, 227 (Ala.Civ.App.2002).
The Websters do not dispute that the description of the lamps as “Tiffany” products was an affirmation of fact or a “description of the goods.” The Websters claim, however, that the description of the lamps as “Tiffany” products did not become part of the basis of the bargain because La Trace signed the conditions of auction before any potential express warranties could be made, effectively rendering such warranties inoperative. In support of their argument, the Websters cite Pell City Wood, 474 So.2d at 695. However, Pell City Wood is inapposite to the facts of this case.
*1218 In Pell City Wood, James Smith purchased at an auction a truck that later needed significant and expensive repairs. Smith was attracted to the auction by a brochure that listed the truck he ultimately purchased. Smith alleged that the brochure made certain factual assertions concerning the condition of the truck and that the auctioneer made several statements concerning the truck, including that “ ‘the trucks are in good condition’ ” and that “ ‘the trucks are ready to work tomorrow.’ ” 474 So.2d at 695. The supreme court held that the statements made by the auctioneer were at best puffery and did not give rise to any express warranties. Id. As to the statements in the brochure that Smith claimed gave rise to express warranties, the supreme court noted that, in the same document, the auction company had included a statement that any descriptions of the items being sold were to be used “only as a guide.” Id. at 696. The supreme court held that the descriptions were not presented as being accurate and that those descriptions, therefore, did not give rise to any express warranties. Id. at 695-96.
In this case, however, unlike in Pell City Wood, the alleged representations that the lamps were “Tiffany” products took place during the auction and were not accompanied by any qualifying statements indicating that the authenticity of the lamps was in doubt. Although the disclaimers that appeared in the sales brochure and the “Conditions of Auction” document may have been effective, pursuant to Pell City Wood, to prevent the formation of any express warranties that might otherwise have arisen in those documents, nothing in the language or holding of Pell City Wood indicates that a disclaimer in a document is effective to prevent a seller from making express warranties in the future. In fact, the supreme court, in Pell City Wood, took pains to emphasize that other than the statements of puffery made by the auctioneer, no representations regarding the condition of the truck were made at the auction. Id. at 695.
Further, part of the Official Comment to § 7-2-313, which we find instructive in the present scenario, appears to contradict the Websters’ argument:
“No specific intention to make a warranty is necessary if any of these factors is made part of the basis of the bargain. In actual practice affirmations of fact made by the seller about the goods during a bargain are regarded as part of the description of those goods; hence no particular reliance on such statements need be shown in order to weave them into the fabric of the agreement. Rather, any fact which is to take such affirmations, once made, out of the agreement requires clear affirmative proof. The issue normally is one of fact.
“4. In view of the principle that the whole purpose of the law of warranty is to determine luhat it is that the seller has in essence agreed to sell, the policy is adopted of those cases which refuse except in unusual circumstances to recognize a material deletion of the seller’s obligation. Thus, a contract is normally a contract for a sale of something describable and described. A clause generally disclaiming ‘all warranties, express or implied’ cannot reduce the seller’s obligation with respect to such description and therefore cannot be given literal effect under Section 7-2-316.”
(Emphasis added.) In Balog v. Center Art Gallery-Hawaii, Inc., 745 F.Supp. 1556, 1563-64 (D.Haw.1990), a federal district court held that a seller’s statement that a piece of artwork was produced by Salvador Dali was a “core description” that was “nondisclaimable” under the UCC. The court explained:
*1219 “The foundation of every express warranty provision is the core description. See U.C.C. § 2-313, Comments 1 and 4. ‘A 1990 Toyota,’ ‘a pair of shoes,’ or ‘a Monet’ are all examples of core descriptions. The core description, at base, provides a reference point for the level of performance to which the seller’s performance must conform. And, because it is assumed under the Code that the object of every sale regulated by the Code is describable, the core description is nondisclaimable by a seller, being the basic foundation upon which every sales contract is made. Cf., Bill Spreen Toyota, Inc. v. Jenquin, 163 Ga.App. 855, 294 S.E.2d 533 (1982) (disclaimer of warranties ineffective to prevent action for fraud when car purchased was not a Toyota as expressly warranted, but was one-half of such a car welded to one-half of another unidentified vehicle).”
745 F.Supp. at 1563-64. This court can reach no conclusion but that the lamps in this case were sold with the core description of Tiffany products.
The Websters present no other relevant citations that support their argument that the alleged descriptions of the lamps at the auction did not give rise to express warranties concerning the lamps. On the basis of §§ 7-2-313 and 7-2-316, therefore, we conclude that La Trace’s allegations regarding the statements made at the auction are sufficient to support his claim that express warranties arose from the Websters’ description of the lamps as Tiffany products.
We note that in conjunction with their motion for a summary judgment the Websters did not present any evidence challenging the factual basis of La Trace’s claims of breach of warranty, breach of contract, and fraudulent misrepresentation, namely that the Websters actually represented the lamps to be Tiffany products, that they reassured La Trace of the same after the auction, and that the lamps are not, in fact, authentic Tiffany products. The Websters argued at trial and argue on appeal that the affidavit of Willis McKiness constituted evidence indicating that the lamps were authentic Tiffany products. However, McKiness did not assert in his affidavit that the lamps were authentic, only that he “believed” them to be authentic at the time he consigned them to B & B. Because McKiness made no claim in his affidavit that the lamps were authentic, his affidavit does not constitute evidence indicating that the lamps are, in fact, authentic. See Hall v. Harris, 504 So.2d 271, 273 (Ala.1987) (stating that “[sjpeculation and subjective beliefs are not the equivalent of personal knowledge and do not satisfy the requirements of Rule 56(e)[, Ala. R. Civ. P.]”).
Because the Websters presented no evidence negating La Trace’s factual claims and because we have concluded that the Websters’ legal arguments in regard to the breach-of-warranty claim are not well-founded, we must also conclude that the Websters failed to establish a prima facie case that there was no genuine issue of material fact and that they were entitled to a judgment as a matter of law. Accordingly, we reverse the trial court’s judgment in regard to La Trace’s breach-of-warranty, breach-of-contract, and fraudulent-misrepresentation claims.

The Fraudulent-Suppression Claim

With respect to La Trace’s fraudulent-suppression claim, we affirm the trial court’s judgment. The elements of a fraudulent-suppression claim are “ ‘(1) a duty on the part of the defendant to disclose facts; (2) concealment or nondisclosure of material facts by the defendant; (3) inducement of the plaintiff to act; and (4) action by the plaintiff to his or her *1220 injury.’ ” Freightliner, L.L.C. v. Whatley Contract Carriers, L.L.C., 932 So.2d 883, 891 (Ala.2005)(quoting Lambert v. Mail Handlers Benefit Plan, 682 So.2d 61, 63 (Ala.1996)). La Trace argues that the Websters fraudulently concealed the fact that they had never sold Tiffany lamps before the auction in question and, therefore, La Trace says, that they had no experience in determining the authenticity of such lamps. “Silence is not actionable fraud absent a confidential relationship or some special circumstances imposing a duty to disclose.” Wilson v. Brown, 496 So.2d 756, 759 (Ala.1986). La Trace presented no evidence of a confidential relationship or other circumstance imposing upon the Websters a duty to disclose. Therefore, we affirm the trial court’s judgment as to La Trace’s fraudulent-suppression claim.

The § 8-U-2S Claim

La Trace next argues that the trial court erred in entering a summary judgment on his § 8-14-23 claim. Section § 8-14-23 provides:
“Any person, firm, or corporation selling, disposing of, or offering for sale at public auction any gold, silver, plated ware, precious stones, watches, clocks, jewelry, bric-a-brac, china, or glassware shall be truthful in describing the same with respect to the character, quality, kind, and description of the same, which, for the purpose thereof, shall be considered as warranties.”
We note initially that, although La Trace lists his § 8-14-23 claim as a separate cause of action, that statute does not, by itself, appear to give rise to any cause of action. Section 8-14-23 is one of a series of three statutes still in force that were originally enacted in 1923 under the title: “An act to regulate the sale at public auction of gold, silver, plated ware, precious stones, watches, clocks, jewelry, brie a brae, china, glassware, and to provide penalties for the violation thereof.” Act No. 522, Ala. Acts 1923 (hereinafter “the 1923 Act”). The portions of the 1923 Act still in force prohibit, in addition to the activities prohibited by § 8-14-23, the use by auctioneers of false bidders, § 8-14-22, Ala.Code 1975, and provide criminal penalties for violations of the provisions of the Act, § 8-14-24, Ala.Code 1975. The record makes clear that La Trace neither seeks to enforce against the Websters the criminal penalties found in § 8-14-24 nor argues that he would have the authority to do so. La Trace fails to cite any authority that recognizes a personal right of action arising out of § 8-14-23. When reviewing a case on appeal, “ ‘it is not the function of this Court to do a party’s legal research or to make and address legal arguments for a party based on undelineated general propositions not supported by sufficient authority or argument.’ Dykes v. Lane Trucking, Inc., 652 So.2d 248, 251 (Ala.1994).” Butler v. Town of Argo, 871 So.2d 1, 20 (Ala.2003); see also Rule 28(a)(10), Ala. R.App. P. Therefore, because La Trace fails to support with relevant authority his § 8-14-23 argument, we affirm the judgment of the trial court insofar as it entered a summary judgment as to any separate claim brought under § 8-14-23.

The Negligence and Wantonness Claims

Finally, La Trace argues that the trial court erred in entering a summary judgment on his negligence and wantonness claims. In their motion for a summary judgment, the Websters presented no argument that they were entitled to a summary judgment as to La Trace’s negligence and wantonness claims. In fact, the only reference to those claims in the Websters’ summary-judgment motion is found in the following sentence: “Based upon the *1221 documentary evidence, and the affidavits presented in support thereof, there is no dispute of a material fact which would prevent this Court from granting Summary Judgment as to all causes of action stated in [La Trace’s] complaint.” As this court has explained, “[a] mere general denial, without more, does not automatically entitle a movant to a judgment as a matter of law.” Clark v. Hackett, 674 So.2d 1306, 1309 (Ala.Civ.App.1995). The Websters’ summary-judgment motion presents, at best, a general denial of liability for negligence and wantonness arising out of the sale of the lamps, and it fails to establish a prima facie case for a summary judgment on those issues. Accordingly we reverse the trial court’s judgment as to La Trace’s negligence and wantonness claims.
Because we have reversed the trial court’s summary judgment as to La Trace’s breach-of-warranty, breach-of-contract, fraudulent-misrepresentation, negligence, and wantonness claims, we remand the case to the trial court for further proceedings consistent with this opinion.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
THOMPSON, P.J., and PITTMAN, BRYAN, and MOORE, JJ., concur.
THOMAS, J., concurs specially.